**BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: CHANGE HEALTHCARE INC. DATA BREACH LITIGATION | MDL NO. _____ |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR TRANSFER AND CENTRALIZATION OF
RELATED ACTIONS TO THE MIDDLE DISTRICT OF TENNESSEE
<u>PURSUANT TO 28 U.S.C. § 1407 FOR CONSOLIDATED PRETRIAL PROCEEDINGS</u>**

**TABLE OF CONTENTS**

INTRODUCTION AND COMMON FACTUAL BACKGROUND ............................................ 1

BACKGROUND ................................................................................................................... 3

ARGUMENT ......................................................................................................................... 3

I.    THE RELATED ACTIONS AND ANY TAG-ALONG ACTIONS ARE APPROPRIATE FOR TRANSFER AND COORDINATION PURSUANT 28 U.S.C. §1407 ............................................................................................................................. 4

    A.    The Related Actions Involve One or More Common Questions of Fact ................ 5

    B.    Transfer and Coordination of the Related Actions to the Middle District of Tennessee Will Further the Convenience of the Parties and Witnesses ................. 6

    C.    Coordination Will Promote the Just and Efficient Conduct of the Related Actions ................................................................................................................. 8

    D.    Centralization Under §1407 Is Appropriate Given the Number of Related Actions and District Courts at Issue ...................................................................... 10

II.    THE MIDDLE DISTRICT OF TENNESSEE IS THE MOST APPROPRIATE TRANSFEREE FORUM. ........................................................................................... 10

    1.    The Key Factor for Transfer Should Be the Presence of Defendant Change Healthcare ................................................................................................ 11

    2.    The Middle District of Tennessee Is Centrally Located for All Related Actions ...................................................................................................... 11

    3.    The Middle District of Tennessee has More Favorable Docket Conditions ............................................................................................................. 11

CONCLUSION ..................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re 21st Century Oncology Customer Data Sec. Breach Litig.*,
214 F. Supp. 3d 1357 (J.P.M.L. 2016)..................................................................................5

*In re: Airline Baggage Fee Antitrust Litig.*,
655 F. Supp. 2d 1362 (J.P.M.L. 2009)................................................................................10

*In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*,
410 F. Supp. 3d 1350 (J.P.M.L. 2019)..............................................................................3, 9

*In re Blackbaud, Inc., Customer Data Sec. Breach Litig.*,
509 F. Supp. 3d 1362 (J.P.M.L. 2020)................................................................................11

*In re: Dairy Farmers of America, Inc. Cheese Antitrust Litig.*,
626 F. Supp. 2d 1348 (J.P.M.L. 2009)..................................................................................6

*In re: Enfamil Lipil Mktg. & Sales Pracs. Litig.*,
764 F. Supp. 2d 1356 (J.P.M.L. 2011)...............................................................................8, 9

*In re: Equifax, Inc., Customer Data Sec. Breach Litig.*,
289 F. Supp. 3d 1322 (J.P.M.L. 2017)..................................................................................7

*In re: First Nat. Collection Bureau, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*,
11 F. Supp. 3d 1353 (J.P.M.L. 2014)....................................................................................8

*In re Fortra File Transfer Software Data Sec. Breach Litig.*,
MDL No. 3090, 2024 WL 436478 (J.P.M.L. 2024) ..............................................................6

*In re LLRice 601 Contamination Litig.*,
466 F. Supp. 2d 1351 (J.P.M.L. 2006)..................................................................................9

*In re: Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales
Pracs. & Prods. Liab. Litig.*,
109 F. Supp. 3d 1382 (J.P.M.L. 2015)..................................................................................9

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
363 F. Supp. 3d 1372 (J.P.M.L. 2019)..................................................................................6

*In re MOVEit Customer Data Sec. Breach Litig.*,
MDL No. 3083 2023 WL 6456749 (J.P.M.L. 2023) .............................................................6

*In re Samsung Customer Data Sec. Breach Litig.*,
655 F. Supp. 3d 1368 (J.P.M.L. 2023)................................................................................11

*In re Uber Techs., Inc., Data Sec. Breach Litig.*,
  304 F. Supp. 3d 1351 (J.P.M.L. 2018) ................................................................................ 6, 7

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
  223 F. Supp. 3d 1353 (J.P.M.L. 2016) ..................................................................................... 6

*In re: Zurn Pex Plumbing Prods. Liab. Litig.*,
  572 F. Supp. 2d 1380 (J.P.M.L. 2008) ..................................................................................... 8

*Stump v. Change Healthcare, Inc.*,
  Case No. 3:24 CV-00255, M.D. Tenn., ................................................................................... 1

**Statutes**

28 U.S.C. §1407 .............................................................................................................. *passim*

**Other Authorities**

Man. for Complex Litig., §20.131 ..................................................................................... 4, 7

Robert A. Cahn, *A Look at the Judicial Panel on Multidistrict Litigation* .................................... 10

Pursuant to 28 U.S.C. §1407 and J.P.M.L. Rule 6.2, Movants Melissa Merry, Robert Reese, Jennifer Stump and Jimmy Allen (collectively, "Movants"), the named Plaintiffs in *Merry v. Change Healthcare Inc.*, (Case No. 3:24-cv-00239, M.D. Tenn.,, filed March 1, 2024, *Reese v. Change Healthcare, Inc.* (Case No. 3:24-cv-00240, M.D. Tenn., filed March 1, 2024), *Stump v. Change Healthcare, Inc.*, Case No. 3:24 CV-00255, M.D. Tenn., filed March 5, 2024, and *Allen v Change Healthcare, Inc.,* Case No. 3:24 CV-00263, M.D. Tenn., filed March 6, 2024, respectively, respectfully move the Judicial Panel on Multidistrict Litigation ("JPML" or "Panel") for an Order transferring and centralizing the six actions listed in the Schedule of Actions, as well as any tag-along cases subsequently filed, to the United States District Court for the Middle District of Tennessee for coordinated or consolidated pretrial proceedings, before whom four of the Actions are currently pending (collectively, the "Related Actions" or "Actions").

**INTRODUCTION AND COMMON FACTUAL BACKGROUND**

All of the Actions subject to this motion arise from one nucleus of operative facts: a data breach suffered by customers of Change Healthcare, Inc. ("Change Healthcare" or "Defendant"), which resulted in more than 6 TB of data – containing personal health information ("PHI") and personally-identifiable information ("PII") including medical records, insurance records, dental records, payment information, claims information, contact information, and Social Security numbers, of millions of persons located throughout the United States ("Change Healthcare Data Breach").

Change Healthcare is a for-profit Delaware corporation with its principal place of business located in Nashville, Tennessee. Among other things, Change Healthcare provides pharmacies, hospitals, and other health care providers in the United States with tools that allow them to

1

electronically process claims and other essential payments and revenue management practices. As part of its business operations, Change Healthcare provides software tools to its clients.

The Data Breach was disclosed on February 21, 2024, when Change Healthcare posted a status update of an incident on its website that, it was suffering "network interruption related to a cyber security issue." Change Healthcare acknowledged the cyberattack incident, which reportedly affected billing and care authorization portals, led to prescription backlogs, missed revenue for providers, and posed potential threats to worker paychecks and even patient care. The ransomware group, known as "ALPHV/BlackCat," claimed responsibility for the cyberattack facilitated by exploiting the vulnerability in Change Healthcare's software in order to exfiltrate data from the underlying databases. This ransomware group claims to have stolen a vast amount of PHI and PII from Change Healthcare and posted screenshots of some of the data that were shared as proof of data theft. Change Healthcare confirmed that ALPHV/BlackCat was behind the cyberattack.

Plaintiffs in the Actions allege that Change Healthcare failed to properly protect their and class members' PII resulting in harm to Plaintiffs and class members, as a result of the Change Healthcare Data Breach.

As of the date of this filing, six Actions are currently pending against Defendant; four were filed in the Middle District of Tennessee and two in the District of Minnesota. Each of the Actions was filed as a putative class action on behalf of overlapping classes of customers whose PII were compromised by the Change Healthcare Data Breach. The Actions are all based on several common questions of fact and law. Thus, there is a compelling need to establish uniform and consistent standards in conducting pretrial discovery and motion practice, and to avoid potentially inconsistent rulings, inefficiencies, and waste of the parties' and judicial resources that would

result if the Actions were allowed to proceed in numerous district courts. This is the sort of case that this Panel has routinely consolidated. This Panel has previously recognized that centralization was proper where, like here, there are multiple defendants entwined in a large data breach. *See In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, 410 F. Supp. 3d 1350, 1353 (J.P.M.L. 2019) (ordering transfer and centralization, recognizing that "a single, multi-defendant MDL" is "necessary to ensure the just and efficient conduct of the litigation").

Given that Change Healthcare is headquartered in Nashville, Tennessee, there is a singular center of gravity. Plaintiffs contend the most logical and convenient location for these proceedings would be the location of the center of gravity – the Middle District of Tennessee, where Change Healthcare maintains a significant presence and where four of the six Actions are pending.

## BACKGROUND

Prior to filing this motion, Plaintiffs conferred with counsel for the six Actions to discuss whether alternatives to centralization, including seeking §1404 transfer to one district court, and information coordination could be accomplished. Counsel for the six Actions could not agree to transfer all Actions to one district court or to informal coordination of the cases given the overlapping claims and classes.

The Change Healthcare Data Breach has impacted millions of people and businesses. Moreover, due to the extensive press coverage thus far, undersigned Plaintiffs anticipate additional class actions will soon commence in other federal courts alleging similar claims on behalf of similar classes.

## ARGUMENT

The Panel may order transfer and coordination if civil actions pending in different districts "involv[e] one or more common questions of fact" and transfer will further "the convenience of

parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. §1407(a). "The objective of transfer is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts." MAN. FOR COMPLEX LITIG., §20.131, at 220 (4th ed. 2004). Because allowing the Actions to proceed independently would almost guarantee duplication of discovery, overlapping efforts, and risk inconsistent rulings, transfer and coordination for pretrial proceedings is necessary and appropriate. The Related Actions all involve common issues of fact – a massive data breach – centralization of which will promote the convenience of the parties and witnesses and the just and efficient conduct of the litigation. *See* 28 U.S.C. §1407. Transfer and centralization will mitigate the possibility of inconsistent rulings, including rulings regarding class certification, and will promote the judicial economy by providing a single forum to which future filed tag-along actions can be transferred.

Here, each of the Actions name Change Healthcare as the primary defendant. Each of these Actions contain similar causes of action, including claims for negligence, negligence *per se*, breach of contract or implied contract, and actions seeking declaratory judgment which warrants centralization pursuant to 28 U.S.C. §1407.

I. **THE RELATED ACTIONS AND ANY TAG-ALONG ACTIONS ARE APPROPRIATE FOR TRANSFER AND COORDINATION PURSUANT 28 U.S.C. §1407**

Transfer and coordination are permitted if civil actions pending in different districts "involv[e] one or more common questions of fact" and this Panel determines that transfer will further "the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. §1407(a). "The objective of transfer is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts." MAN. FOR COMPLEX LITIG.,

4

§20.131, at 220. Transfer and coordination for pretrial proceedings would achieve those objectives in the Related Actions and is therefore appropriate here.

      **A.**      **The Related Actions Involve One or More Common Questions of Fact**

Transfer and coordination are appropriate here as the Related Actions are based upon the same facts concerning the Change Healthcare Data Breach. The factual questions common to the Related Actions include, but are not limited to:

    i. whether Defendant owed a duty to Plaintiffs and other similarly situated class members to protect PII;

    ii. whether Defendant failed to provide reasonable security to protect PII;

    iii. whether Defendant negligently or otherwise improperly allowed PII to be accessed by third parties;

    iv. whether Defendant failed to adequately notify Plaintiffs and similarly situated class members that its data systems were breached;

    v. whether Plaintiffs and similarly situated class members suffered legally cognizable damages as a result of the Change Healthcare Data Breach, and, if so, in what amount; and

whether Plaintiffs and class members are entitled to declaratory judgement.

Additionally, all Related Actions rely upon similar legal theories of recovery, each turning on the failure of Defendant to prevent the Change Healthcare Data Breach. As the Panel consistently recognizes, centralization is appropriate in the context of data breach actions because where "all actions stem from the same data breach," discovery across all actions will address exactly these questions, including "how and when [the breach] was identified, what security measures [defendant] had in place for securing patient data, and what steps it took after discovery of the breach." *In re 21st Century Oncology Customer Data Sec. Breach Litig.*, 214 F. Supp. 3d

5

1357, 1358 (J.P.M.L. 2016); *see also In re Fortra File Transfer Software Data Sec. Breach Litig.*, MDL No. 3090, 2024 WL 436478, at *1 (J.P.M.L. 2024) ("All actions can be expected to share factual questions arising from the January 2023 breach of defendant Fortra's 'GoAnywhere' managed file transfer software."); *In re MOVEit Customer Data Sec. Breach Litig.*, MDL No. 3083 2023 WL 6456749, at *2 (J.P.M.L. 2023) ("All actions can be expected to share common and complex factual questions as to how the MOVEit vulnerability occurred."); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 363 F. Supp. 3d 1372, 1374 (J.P.M.L. 2019) ("The factual overlap among these actions is substantial, as they all arise from the same data breach, and they all allege that Marriott failed to put in to place reasonable data protections."); *In re Uber Techs., Inc., Data Sec. Breach Litig.*, 304 F. Supp. 3d 1351, 1353 (J.P.M.L. 2018) ("Common factual questions are presented with respect to Uber's practices in safeguarding its users' personal information, the investigation into the breach, the alleged delay in disclosing the breach, and the nature of the alleged damages."); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 223 F. Supp. 3d 1353, 1354 (J.P.M.L. 2016) ("Common factual questions are presented with respect to Yahoo's practices in safeguarding its users' personal information, the investigation into the breach, the alleged delay in disclosing the breach, and the nature of the alleged damages."). Given the substantial factual overlap across the Actions, centralization will eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary.

    **B.**    **Transfer and Coordination of the Related Actions to the Middle District of Tennessee Will Further the Convenience of the Parties and Witnesses**

Centralization under 28 U.S.C. §1407 is proper when it will "serve the convenience of the parties and witnesses and promote the just and efficient conduct of [the] litigation." *In re: Dairy Farmers of America, Inc. Cheese Antitrust Litig.*, 626 F. Supp. 2d 1348 (J.P.M.L. 2009).

6

Centralization is appropriate where, as here, it will "eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts." MAN. FOR COMPLEX LITIG., §20.131 at 220.

Change Healthcare faces multiple Actions asserting claims on behalf of overlapping classes. Absent centralization and transfer, all parties will be subjected to duplicative and motion practice and discovery. *See, e.g.*, *Uber*, 304 F. Supp. 3d at 1353 ("Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification; and conserve the resources of the parties, their counsel, and the judiciary.").

Absent transfer, the federal court system will be forced to administer – and Change Healthcare will be compelled to defend – the Related Actions asserting overlapping class actions across multiple venues, all proceeding on potentially different pretrial schedules and subject to different judicial decision-making and local procedural requirements. Moreover, each Plaintiff will be required to monitor and possibly participate in each of the other similar Actions to ensure that Change Healthcare and any future co-defendants do not provide inconsistent or misleading information. Many of the same pretrial disputes are likely to arise in each Action. Likewise, due to the similar causes of action in each complaint, the defenses asserted in the Actions will be substantially the same, as will the substance of any motions to dismiss and motions for summary judgment, which will be based on the same claims and based on the same arguments in each Action. None of the pending cases have progressed to the point where efficiencies will be forfeited through transfer to an MDL proceeding – each Action is in its infancy.

While Plaintiffs' counsel anticipates there will be additional case filings, the current level of litigation – six Actions in two separate District Courts – would benefit from transfer and coordinated proceedings, given the allegations of these complaints. *In re: Equifax, Inc., Customer*

*Data Sec. Breach Litig.*, 289 F. Supp. 3d 1322, 1324 (J.P.M.L. 2017) (finding that "centralization under Section 1407 . . . will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation"); *see also In re: First Nat. Collection Bureau, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 11 F. Supp. 3d 1353, 1354 (J.P.M.L. 2014) ("[E]fficiencies can be gained from having these actions proceed in a single district," such as "eliminat[ing] duplicative discovery; prevent[ing] inconsistent pretrial rulings . . . and conserv[ing] the resources of the parties, their counsel and the judiciary."); *In re: Zurn Pex Plumbing Prods. Liab. Litig.*, 572 F. Supp. 2d 1380, 1381 (J.P.M.L. 2008) (granting transfer and consolidation of five cases and six potential tag-alongs because of the "overlapping and, often, nearly identical factual allegations that will likely require duplicative discovery and motion practice").

In sum, transfer and coordination of the Related Actions to a single federal district will mitigate these problems by enabling a single judge to manage discovery and the parties to coordinate their efforts.  This will reduce litigation costs and minimize inconvenience to the parties and witnesses, to the benefit of all litigations, third parties, and the courts.  *See In re: Enfamil Lipil Mktg. & Sales Pracs. Litig.*, 764 F. Supp. 2d 1356, 1357 (J.P.M.L. 2011).

### C. Coordination Will Promote the Just and Efficient Conduct of the Related Actions

Centralization will "promote the just and efficient conduct of [the] actions" because the Related Actions will likely involve many of the same pretrial issues concerning the nature and scope of discovery and the sufficiency of Plaintiffs' allegations.  *See* 28 U.S.C. §1407(a). Discovery will be more effectively and efficiently managed, while the resources of the parties, attorneys, and judicial system are conserved.  Coordination is therefore necessary to prevent inconsistent pretrial rulings on many central issues, which would present substantial problems

8

because of the consistency in factual and legal allegations between the Related Actions. *See In re LLRice 601 Contamination Litig.*, 466 F. Supp. 2d 1351, 1352 (J.P.M.L. 2006).

Centralization is necessary to prevent inconsistent pretrial rulings on many central issues, which would present significant problems due to the substantial consistency in factual and legal allegations among all Related Actions. *Id*. (observing that centralization would "prevent inconsistent pretrial rulings" on class certification and other issues). The prospect of inconsistent rulings also encourages forum and judge shopping (including, for example, manipulation of non-congruent discovery limits, approaches to electronically stored information, and protective order issues). By contrast, a single MDL judge coordinating pretrial discovery and ruling on pretrial motions in all of these federal cases at once will help reduce witness inconvenience, the cumulative burden on the courts, and the litigation's overall expense, as well as minimizing this potential for conflicting rulings. *Id*. Centralization will mitigate these problems by enabling a single judge to manage discovery and the parties to coordinate their efforts. *Am. Med. Collection Agency, Inc.*, 410 F. Supp. 3d at 1353 ("[A] single MDL encompassing [multiple defendants] is necessary to ensure the just and efficient conduct of this litigation."). This will reduce litigation costs and minimize inconvenience to the parties and witnesses, to the benefit of litigants, third parties, and the courts. *See id*. at 1354 ("centralization will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation"); *Enfamil*, 764 F. Supp. 2d at 1357 ("Centralizing the actions will allow for the efficient resolution of common issues and prevent unnecessary or duplicative pretrial burdens from being placed on the common parties and witnesses."); *In re: Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 109 F. Supp. 3d 1382, 1383 (J.P.M.L. 2015) ("Centralization will . . . conserve the resources of the parties, their counsel and the judiciary.").

### D. Centralization Under §1407 Is Appropriate Given the Number of Related Actions and District Courts at Issue

Centralization is particularly appropriate given the number of Related Actions pending in two federal district courts. Given the number of current cases and the likelihood of future filings, and the number of differing federal district courts, §1407 transfer is a useful and appropriate way to get in front of subsequent tag-along actions. *See In re: Airline Baggage Fee Antitrust Litig.*, 655 F. Supp. 2d 1362, 1363 (J.P.M.L. 2009) ("In light of the very large number of individuals affected by the fees in question, the possibility of additional actions arising in other districts (with ensuing duplicative Section 1404(a) motion practice) looms.").

## II. THE MIDDLE DISTRICT OF TENNESSEE IS THE MOST APPROPRIATE TRANSFEREE FORUM

Two of the Panel's weightiest considerations in deciding on an appropriate transferee district are: (1) the district's central location to the parties, witnesses, documents, and counsel, and (2) ease of accessibility. These factors strongly militate in favor of transfer to the Middle District of Tennessee.

Moreover, the selection of an appropriate transferee forum depends greatly on the specific facts and circumstances of the litigation being considered for consolidation. The decision involves a "balancing test based on the nuances of a particular litigation" that considers several factors. *See* Robert A. Cahn, *A Look at the Judicial Panel on Multidistrict Litigation*, 72 F.R.D. 211, 214 (1977). Here, the Middle District of Tennessee is the most appropriate venue because: (1) Tennessee is the headquarters of Defendant, whose documents and witnesses will be critical to the litigation; (2) it is a convenient forum located centrally between all cases filed to date, and because of the ease of direct travel for the parties' counsel; and (3) it has the resources and the subject matter experience that this litigation will require.

1. **The Key Factor for Transfer Should Be the Presence of Defendant Change Healthcare**

In proposed MDLs centered on data security breaches, the Panel has often ruled that the single most important factor in deciding where to send the MDL is the presence of key documents and witnesses. For example, in Samsung, this Panel held that "Defendant has its headquarters in New Jersey, where common witnesses and other evidence likely will be found." *In re Samsung Customer Data Sec. Breach Litig.*, 655 F. Supp. 3d 1368, 1369 (J.P.M.L. 2023). *See also In re Blackbaud, Inc., Customer Data Sec. Breach Litig.*, 509 F. Supp. 3d 1362, 1364 (J.P.M.L. 2020) ("Blackbaud has its headquarters in South Carolina. Thus, common witnesses and other evidence likely will be located in this district.") Here, the data breach involved Change Healthcare's systems, not the systems of its parent corporation United HealthGroup. Change Healthcare is headquartered in Nashville, Tennessee, and its officers and executives are located in Tennessee.[1]

2. **The Middle District of Tennessee Is Centrally Located for All Related Actions**

The Related Actions are pending in Tennessee and Minnesota. Tennessee is easily the most centrally located of all these locations, and Nashville International Airport possesses both an international airline hub, but is also an international business headquarters, making travel to and from Nashville easy and convenient.

3. **The Middle District of Tennessee Has More Favorable Docket Conditions**

The Middle District of Tennessee stands out for its advantageous docket conditions, especially when compared to the District of Minnesota. The Middle District of Tennessee has extensive MDL experience, with only 9 actions currently pending in the only MDL in the Middle

---

[1] *See Executive Leadership Team*, CHANGE HEALTHCARE, https://cs-gw-www-ie.staging.changehealthcare.com/people/leadership (last accessed March 12, 2024).

11

District of Tennessee, demonstrating a capacity for handling an additional MDL effectively.[2] Conversely, the District of Minnesota has 6,394 actions pending in 5 MDLs, underscoring its status as already being overwhelmed.[3] Moreover, the Middle District of Tennessee has one of the least congested dockets nationwide, with only 2,072 matters pending and a manageable 518 pending cases per Judgeship.[4] Conversely, the District of Minnesota struggles with an overcrowded docket, tallying 8,072 matters pending and an overwhelming 1,161 pending cases per Judgeship.[5] In stark contrast with the District of Minnesota, the Middle District of Tennessee has the ability to take on additional matters, including an MDL, and the ability to do so efficiently and effectively due to its non-crowded status, making it an attractive jurisdiction for this MDL.

## CONCLUSION

For the foregoing reasons, Movants respectfully request this motion be granted and the Panel transfer the Actions listed in the attached Schedule of Actions, as well as any future tag-along actions, to the Middle District of Tennessee, for consolidated or coordinated pretrial proceedings under 28 U.S.C. §1407.

Dated: March 12, 2024                           Respectfully submitted,

                                                **STRANCH, JENNINGS & GARVEY, PLLC**

                                                */s/ J. Gerard Stranch, IV*
                                                J. Gerard Stranch, IV
                                                Michael Iadevaia
                                                Emily Schiller
                                                223 Rosa L. Parks Avenue, Suite 200

---

[2] MDL Statistics Report, - Distribution of Pending MDL Dockets by District, J.P.M.L., https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-March-1-2024.pdf (last accessed on March 11, 2024).

[3] *Id.*

[4] Comparison of Districts Within the First Circuit – 12-Month Period Ending March 31, 2023, U.S. Courts, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison0331.2023.pdf (last accessed on March 11, 2024).

[5] *Id.*

Nashville, Tennessee 37203
Telephone: (615) 254-8801
gstranch@stranchlaw.com
miadevaia@stranchlaw.com
eschiller@stranchlaw.com

**KOPELOWITZ OSTROW P.A.**

Jeff Ostrow
Kenneth J. Grunfeld
1 West Las Olas Blvd., Ste. 500
Fort Lauderdale, Florida 33301
Tel: (954) 525-4100
ostrow@kolawyers.com
grunfeld@kolawyers.com

*Counsel for Plaintiff Melissa Merry*

**SCOTT+SCOTT ATTORNEYS AT LAW**

*/s/ Joseph P. Guglielmo*
Joseph P. Guglielmo
Amanda M. Rolon
Ethan S. Binder
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
jguglielmo@scott-scott.com
arolon@scott-scott.com
ebinder@scott-scott.com

**STRANCH, JENNINGS & GARVEY, PLLC**
J. Gerard Stranch, IV
Michael Iadevaia
Emily Schiller
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Telephone: (615) 254-8801
gstranch@stranchlaw.com
miadevaia@stranchlaw.com
eschiller@stranchlaw.com

**LAW OFFICE OF ALFRED G. YATES, JR., P.C.**

13

Alfred G. Yates, Jr.
1575 McFarland Road, Suite 305
Pittsburgh, PA 15216
Telephone: (412) 391-5164
Facsimile: (412) 471-1033
yateslaw@aol.com

*Counsel for Plaintiff Robert Reese*

**STRANCH, JENNINGS & GARVEY, PLLC**

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV
Michael Iadevaia
Emily Schiller
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Telephone: (615) 254-8801
gstranch@stranchlaw.com
miadevaia@stranchlaw.com
eschiller@stranchlaw.com

**COHEN & MALAD, LLP**

Lynn A. Toops
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481
ltoops@cohenandmalad.com

**TURKE & STRAUSS LLP**

Samuel J. Strauss
Raina Borrelli
613 Williamson Street, Suite 201
Madison, Wisconsin 53703
Telephone: (608) 237-1775
Facsimile: (608) 509-4423
sam@turkestrauss.com
raina@turkestrauss.com

*Counsel for Plaintiff Jennifer Stump*

**STRANCH, JENNINGS & GARVEY, PLLC**

14

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV
Michael Iadevaia
Emily Schiller
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Telephone: (615) 254-8801
gstranch@stranchlaw.com
miadevaia@stranchlaw.com
eschiller@stranchlaw.com

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN LLC**

Gary M. Klinger
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: (866) 252-0878
gklinger@milberg.com

**THE CONSUMER PROTECTION FIRM, PLLC**

William "Billy" Peerce Howard
401 East Jackson Street, Suite 2340
Tampa, FL 33602
Telephone: 813-500-1500
billy@TheConsumerProtectionFirm.com

*Counsel for Plaintiff Jimmy Allen*