**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE: CHANGE HEALTHCARE, INC., CUSTOMER DATA SECURITY BREACH LITIGATION** | **MDL No. 3108** |

**CHANGE HEALTHCARE INC.'S RESPONSE TO MOTION FOR CONSOLIDATION
AND TRANSFER UNDER 28 U.S.C. § 1407**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................1

BACKGROUND .................................................................................................................2

ARGUMENT .......................................................................................................................3

I.     Centralization under Section 1407 would enhance efficiency and just resolution of the Actions filed nationwide. ...................................................................................................3

II.     The Middle District of Tennessee Is the Appropriate Transferee District..........................7

        A.     Change—the Victim of the Cyberattack—Is Headquartered in the Middle District of Tennessee and Much of the Evidence Is There. ..................................................8

        B.     The Middle District of Tennessee Is Convenient and Accessible for All Parties....9

        C.     A Majority of the Cases Have Been Filed in the Middle District of Tennessee....10

        D.     The Middle District of Tennessee Is Well-Equipped to Adjudicate a Complex Multi-District Litigation Related to a Cyberattack. ...............................................11

CONCLUSION..................................................................................................................12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re 7-Eleven Franchise Antitrust Litig.*,
    358 F. Supp. 286 (J.P.M.L. 1973) ..................................................................................... 5

*In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*,
    410 F. Supp. 3d 1350 (J.P.M.L. 2019) ............................................................................... 5

*In re Anthem, Inc., Customer Data Sec. Breach Litig.*,
    109 F. Supp. 3d 1364 (J.P.M.L. 2015) ............................................................................... 5

*In re Blue Cross Blue Shield Antitrust Litig.*,
    908 F. Supp. 2d 1373, 1376 (J.P.M.L. 2012) ..................................................................... 4

*Castell v. Change Healthcare Inc., et al.*,
    No. 3:24-cv-00339 (M.D. Tenn. Mar. 25, 2024) ................................................................ 8

*In re Change Healthcare, Inc., Customer Data Security Breach Litigation*,
    MDL No. 3108 .................................................................................................................. 3

*In re Cmty. Health Sys., Inc. Customer Sec. Data Breach Litig.*,
    84 F. Supp. 3d 1362 (J.P.M.L. 2015) ............................................................................ 5, 6

*Damocles et al. v. Mitsubishi Motors N. Am., Inc.*,
    No. 3:22-CV-0001 (M.D. Tenn.) ..................................................................................... 11

*In re Elec. Books Antitrust Litig.*,
    846 F. Supp. 2d 1378 (J.P.M.L. 2011) ............................................................................... 7

*In re Fortra File Transfer Software Data Sec. Breach Litig.*,
    No. MDL 3090, 2024 WL 436478 (J.P.M.L. Feb. 5, 2024) ............................................... 4

*Franchi v. SmileDirectClub, Inc., et al.*,
    No. 3:19-cv-00962 (M.D. Tenn.) ..................................................................................... 11

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
    559 F. Supp. 2d 1405 (J.P.M.L. 2008) ............................................................................... 9

*Herrick v. UnitedHealth Group Inc., et al.*,
    No. 3:24-cv-00293 (M.D. Tenn. Mar. 22, 2024) ................................................................ 8

*In re Home Depot, Inc., Customer Data Sec. Breach Litig.*,
    65 F. Supp. 3d 1398 (J.P.M.L. 2014) ......................................................................... *passim*

*Mackey v. UnitedHealth Group Incorporated, et al.*,
 No. 24-cv-00771 (D. Minn. Mar. 5, 2024) ..............................................................................4

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
 544 F. Supp. 3d 1371 (J.P.M.L. 2021)...................................................................................5

*In re MOVEit Customer Data Sec. Breach Litig.*,
 No. MDL 3083, 2023 WL 6456749 (J.P.M.L. Oct. 4, 2023) ..........................................4, 5, 8

*Mt. Rainier Emergency Physicians, et al. v. Change Healthcare Inc., et al.*,
 No. 3:24-cv-00323 (M.D. Tenn. March 28, 2024) ..................................................................3

*In re Perry Johnson & Assocs. Med. Transcription Data Sec. Breach Litig.*,
 No. MDL 3096, 2024 WL 436485 (J.P.M.L. Jan. 30, 2024).....................................................4

*In re RealPage, Inc., Rental Software Antitrust Litig.*,
 669 F. Supp. 3d 1372 (J.P.M.L. 2023)..........................................................................6, 9, 11

*In re Schnuck Mkts., Inc. Customer Data Sec. Breach Litig.*,
 978 F. Supp. 2d 1379 (J.P.M.L. 2013)...................................................................................8

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
 802 F. Supp. 2d 1370 (J.P.M.L. 2011)............................................................................5, 8, 9

*In re Supervalu, Inc. Customer Data Sec. Breach Litig.*,
 67 F. Supp. 3d 1377 (J.P.M.L. 2014)..............................................................................5, 6, 9

*In re T-Mobile Customer Data Sec. Breach Litig.*,
 576 F. Supp. 3d 1373 (J.P.M.L. 2021)...................................................................................6

*In re Target Corp. Customer Data Sec. Breach Litig.*,
 11 F. Supp. 3d 1338 (J.P.M.L. 2014)..................................................................................5, 8

*In re TJX Cos. Customer Data Sec. Breach Litig.*,
 493 F. Supp. 2d 1382 (J.P.M.L. 2007)................................................................................6, 7

*In re Uber Techs., Inc., Data Sec. Breach Litig.*,
 304 F. Supp. 3d 1351 (J.P.M.L. 2018)...................................................................................5

*In re Zappos.com, Inc., Customer Data Sec. Breach Litig.*,
 867 F. Supp. 2d 1357 (J.P.M.L. 2012)................................................................................5, 8

**Statutes**

28 U.S.C. § 1407................................................................................................................ *passim*

28 U.S.C. § 1407(a) ......................................................................................................................3

Fed. R. Civ. P. 23 .........................................................................................................................5

**Other Authorities**

Change Healthcare Cyber Response, UnitedHealth Group,
https://www.unitedhealthgroup.com/ns/changehealthcare.html (*last visited*
April 2, 2024) ............................................................................................................. 2, 8

Statistics Report—Distribution of Pending MDL Dockets (March 1, 2024),
https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_D
istrict-March-1-2024.pdf ................................................................................................ 11

**INTRODUCTION**

Change Healthcare Inc. ("Change") supports the pending 28 U.S.C. § 1407 motion of Plaintiffs Jimmy Allen, Melissa Merry, Robert Reese, and Jennifer Stump to centralize and transfer the currently filed and subsequently filed actions ("Actions") arising out of the cyberattack on Change (the "Cyberattack"). Change likewise agrees that for the convenience of the parties, the Panel should transfer the Actions to the United States District Court for the Middle District of Tennessee, Change's home district.[1]

In February 2024, Change was the victim of a Cyberattack. Change has worked tirelessly over the last six weeks to restore systems and services to support individuals, customers, and other providers. All of the Actions include common factual and legal issues arising from the Cyberattack and assert substantially identical causes of action on behalf of overlapping putative nationwide and/or statewide classes. All of the Actions were filed in the last five weeks and are in the earliest stages of litigation. Centralization of these Actions in a single district is imperative to prevent duplicative discovery and inconsistent pretrial rulings, and to conserve the resources of the parties and the courts.

The Actions should be transferred to and centralized in the Middle District of Tennessee because that district has the strongest connection to this litigation and the litigation can be handled most efficiently there. Indeed, Change—the only common defendant in every Action and the entity that suffered the Cyberattack—is headquartered in Tennessee. Key custodians, witnesses, and evidence—including many Change corporate records, documents, and servers—are in Tennessee. This district also is home to the first-filed Action and over half of all associated Actions. Finally,

---

[1] UnitedHealth Group Incorporated ("UHG"), UnitedHealthcare, Inc. ("UHC"), and Optum, Inc. ("Optum") (collectively with Change, the "Defendants") are named in certain Actions and join in Change's Response to Motion for Consolidation and Transfer Under 28 U.S.C. § 1407.

the Middle District of Tennessee and the judge assigned to most of that District's Actions, Judge Eli Richardson, are well-equipped—and have the docket conditions necessary—to adjudicate a complex multi-district litigation ("MDL").

## BACKGROUND

Change, a subsidiary of UHG, works across the health system to make clinical, administrative, and financial processes simpler and more efficient for consumers, providers, and payers, supporting, for example, pharmacy claims transactions, provider claims processing, and provider payments. On February 21, 2024, Change detected that an unauthorized actor had gained access to the Change environment. Change took prompt action to contain the incident, and Defendants have invested extraordinary efforts to avoid harmful effects to individuals, providers, and payers as a result of the incident. Numerous Change systems are back online, and others will be restored in the coming days and weeks. By March 7, Change had restored 99% of Change pharmacy network services. On March 15, Change's electronic payments platform was restored. Change's largest clearinghouse was back online the weekend of March 23. What is more, Defendants have established numerous workarounds for providers to submit claims for reimbursement. Defendants also established a Temporary Funding Assistance Program and, to date, have advanced more than $3.3 billion to care providers who need further assistance. *See* Information on the Change Healthcare Cyber Response, UnitedHealth Group, https://www.unitedhealthgroup.com/ns/changehealthcare.html (*last visited* April 2, 2024) (under "Relief Programs" and "Temporary Funding Assistance Program" and "Inquiries About Funding Support").

On March 1, 2024, plaintiffs began filing putative class action suits against Defendants. Through April 2, 2024, 24 putative federal class actions have been filed against Change (and

various groupings of the Defendants) relating to the Cyberattack. Every complaint names Change, and every complaint alleges harms stemming from the Cyberattack. All of the Actions were filed within the past five weeks and are in their procedural infancy. Several Actions have not yet been served, and Defendants have not yet responded to any of the complaints. To promote efficiency, Defendants are seeking stays of the Actions pending this Panel's decision.

## ARGUMENT

**I.      Centralization under Section 1407 would enhance efficiency and just resolution of the Actions filed nationwide.**

The Panel has authority under 28 U.S.C. § 1407 to transfer "civil actions involving one or more common questions of fact [that] are pending in different districts" to a single district for centralized pretrial proceedings. 28 U.S.C. § 1407(a). Centralization for pretrial proceedings is warranted when, like here, transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." *Id.*

*First*, the Actions all involve overlapping issues of fact. All Actions have been filed against Change—or a combination of the Defendants—arising out of the Cyberattack.[2] Of the 24 putative class actions tagged arising from the Cyberattack: 13 were filed by individuals (the "Consumer Cases"); and 11 were filed by providers (the "Provider Cases"). *See* Associated Cases, *In re Change Healthcare, Inc., Customer Data Security Breach Litigation*, MDL No. 3108, *last updated* April 2, 2024 at 9 PM ET. While the core allegations in the complaints are similar, the Provider Cases generally allege that plaintiffs purportedly experienced a delay in receiving insurance claim payments while Change worked to restore its systems, and the Consumer Cases generally allege

---

[2] An Amended Complaint filed in *Mt. Rainier Emergency Physicians, et al. v. Change Healthcare Inc., et al.* names another Tennessee-based entity, Change Healthcare Solutions, LLC. Am. Compl., No. 3:24-cv-00323 (M.D. Tenn. March 28, 2024). Change Healthcare Solutions, LLC has not been served as of the date of this filing.

that plaintiffs' data "presumably" was impacted and they might now face an increased risk of future identity theft. Compl. at ¶¶ 5, 22, *Mackey v. UnitedHealth Group Incorporated, et al.*, No. 24-cv-00771 (D. Minn. Mar. 5, 2024), ECF No. 1.

Despite the slight differences in allegations depending on whether a case was filed by a provider or consumer, at bottom, all Actions are based on the incorrect and unfounded theory that, because a cyberattack occurred, Change's security must have been deficient and Plaintiffs must have been have harmed. As a result, all Actions should be centralized together to promote the "just and efficient conduct" of this litigation. *See In re MOVEit Customer Data Sec. Breach Litig.*, No. MDL 3083, 2023 WL 6456749, at *2 (J.P.M.L. Oct. 4, 2023).

These minor differences among the Provider and Consumer Complaints do not undermine the basis for centralization. It is black letter law from the Panel that a "complete identity of common factual issues is not a prerequisite to transfer under Section 1407, and the presence of additional facts or differing legal theories is not significant when the actions arise from a common factual core." *In re Home Depot*, 65 Supp. 3d 1398, 1399 (J.P.M.L. 2014) (citing *In re Blue Cross Blue Shield Antitrust Litig.*, 908 F. Supp. 2d 1373, 1376 (J.P.M.L. 2012)). Here, centralization will promote efficiency, consistency, and fairness as "discovery and motions concerning . . . data security practices, how the unauthorized access occurred, and the investigation into the breach" transpires. *In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, 410 F. Supp. 3d 1350, 1353 (J.P.M.L. 2019).

Not only does the Panel frequently centralize related actions arising from a cyberattack or data breach,[3] but the Panel also regularly does so when there are unique factual issues across the

---

[3] *See, e.g.*, *In re Fortra File Transfer Software Data Sec. Breach Litig.*, No. MDL 3090, 2024 WL 436478, at *1 (J.P.M.L. Feb 5, 2024); *In re Perry Johnson & Assocs. Med. Transcription Data Sec. Breach Litig.,* No. MDL 3096, 2024 WL 436485, at *1 (J.P.M.L. Jan. 30, 2024); *In re*

related actions, so long as there are key overlapping questions of fact, as there are here. For example, in *In re AMCA*, the Panel found that even though there were multiple laboratory defendants that had contracted with the breached vendor, "common factual questions in all actions unquestionably [arose] from the same recently-disclosed breach . . . ." *In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, 410 F. Supp. 3d 1350, 1353 (J.P.M.L. 2019 (creating a single, multi-defendant MDL and relying on the transferee judge to "accommodate any issues involving the different laboratories in a manner that ensures the just and efficient resolution of all cases"). Likewise, in the recent Transfer Order regarding the MOVEit cybersecurity vulnerability cases, the Panel found "share[d] common and complex factual questions" regarding the unauthorized access and emphasized its obligation to "consider the needs of all parties and view the litigation as a whole."[4] *In re MOVEit Customer Data Sec. Breach Litig.*, 2023 WL 6456749, at *2-3 (holding that all cases should be centralized in a single MDL, even though

---

*MOVEit*, 2023 WL 6456749, at *3; *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 544 F. Supp. 3d 1371, 1372 (J.P.M.L. 2021); *In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, 410 F. Supp. 3d 1350, 1353 (J.P.M.L. 2019); *In re Uber Techs., Inc., Data Sec. Breach Litig.*, 304 F. Supp. 3d 1351, 1355 (J.P.M.L. 2018); *In re Anthem, Inc., Customer Data Sec. Breach Litig.*, 109 F. Supp. 3d 1364, 1365 (J.P.M.L. 2015); *In re Cmty. Health Sys., Inc. Customer Sec. Data Breach Litig.*, 84 F. Supp. 3d 1362, 1363 (J.P.M.L. 2015); *In re Supervalu, Inc. Customer Data Sec. Breach Litig.*, 67 F. Supp. 3d 1377, 1378(J.P.M.L. 2014); *In re Target Corp. Customer Data Sec. Breach Litig.*, 11 F. Supp. 3d 1338, 1338 (J.P.M.L. 2014); *In re Home Depot, Inc., Customer Data Sec. Breach Litig.*, 65 F. Supp. 3d 1398, 1399-400 (J.P.M.L. 2014); *In re Zappos.com, Inc., Customer Data Sec. Breach Litig.*, 867 F. Supp. 2d 1357, 1358 (J.P.M.L. 2012); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 802 F. Supp. 2d 1370, 1371 (J.P.M.L. 2011).

[4] That the putative class action complaints contain similar factual allegations regarding the Cyberattack demonstrates that there are "common questions" for purposes of consolidation and coordination under Section 1407 only. "The criteria for a class determination pursuant to Rule 23 of the Federal Rules of Civil Procedure are different from the criteria for transfer pursuant to 28 U.S.C. § 1407," *In re 7-Eleven Franchise Antitrust Litig.*, 358 F. Supp. 286, 287 (J.P.M.L. 1973), and Defendants dispute that commonality, adequacy, typicality, predominance, or any other class certification requirement in Rule 23 is satisfied. Defendants reserve all rights, including but not limited to stating at the appropriate time that the requirements for class certification under Rule 23 are not satisfied.

5

defendants were differently situated—for example, some defendants were customer-facing and others were not).

*Second*, centralization of the Actions in a single district for pretrial proceedings will avoid the inefficiency, expense, and risk of inconsistent rulings that would result from separate litigation of substantially similar cases across the country. Without centralization, the Actions could proceed separately against Defendants in dozens of cases and at least 7 districts from New Jersey to California. *See, e.g.*, *In re RealPage, Inc., Rental Software Antitrust Litig.*, 669 F. Supp. 3d 1372, 1373 (J.P.M.L. 2023) ("Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings, particularly as to class certification; and conserve the resources of the parties, their counsel, and the judiciary."); *In re Cmty. Health Sys., Inc. Customer Sec. Data Breach Litig.*, 84 F. Supp. 3d at 1362 (finding that consolidation will "prevent inconsistent pretrial rulings on class certification and other issues").

Further, because the Actions share the same core factual allegations and assert substantially identical legal claims, overlapping discovery will occur across the Actions if the cases are not consolidated. In particular, centralizing the pretrial proceedings will prevent duplicative written discovery, depositions, and expert discovery involving Change—the principal defendant across all Actions—the Cyberattack, Change's security, the impacted data, services downtime and restoration, and the alleged harms. The parties also would have to litigate—and the courts resolve—the same discovery disputes and other legal issues multiple times which, as described above, could lead to inconsistent rulings. Centralization thus will greatly conserve judicial and party resources. *See, e.g.*, *In re Supervalu*, 67 F. Supp. 3d at 1378 (finding that "[c]entralization will eliminate duplicative discovery" that "may be quite technical and contentious" and will "conserve the resources of the parties, their counsel, and the judiciary"); *In re T-Mobile Customer*

6

*Data Sec. Breach Litig.*, 576 F. Supp. 3d 1373, 1375 (J.P.M.L. 2021) (same); *In re Home Depot*, 65 F. Supp. 3d at 1399 (same); *In re TJX Cos. Customer Data Sec. Breach Litig.*, 493 F. Supp. 2d 1382, 1383 (J.P.M.L. 2007) (same).

*Third*, transfer and centralization are likewise appropriate because all of the Actions are in their procedural infancy. The Actions were filed within the last five weeks, and Defendants have not filed responses in any Action. Indeed, Defendants have not yet been served in several of the Actions. Because the transferor courts have not yet had to take any substantive actions in these cases, centralization will not result in the duplication of efforts by the transferee court or result in any prejudice to Plaintiffs. The Panel has granted centralization in instances where the underlying actions were in the early stages, finding that centralized proceedings would provide for efficiency and that transfer would not be disruptive. *See, e.g.*, *In re Elec. Books Antitrust Litig.*, 846 F. Supp. 2d 1378, 1379 (J.P.M.L. 2011) (finding centralization appropriate where "[a]ll actions" had "not progressed beyond the filing of the complaints").

Accordingly, the Panel should transfer and centralize the Actions pursuant to 28 U.S.C. § 1407.

## II.   The Middle District of Tennessee Is the Appropriate Transferee District.

Defendants respectfully submit that the Middle District of Tennessee is the appropriate transferee district for these Actions.[5]  In determining the most convenient and efficient forum for transfer, the Panel frequently considers the following factors: where the defendant is headquartered; where the plaintiffs are located; where actions and potential tag-along actions are pending; where non-party witnesses and evidence likely exist; whether the jurisdiction has

---

[5] If the Panel is not inclined to centralize the Actions in the Middle District of Tennessee, the District of Minnesota is the next most appropriate transferee district.

resources necessary to manage an MDL; and whether multiple parties agree on transfer to a given district. *See, e.g., In re Target Crop. Cust. Data Sec. Breach Litig.*, 11 F. Supp. 3d 1338 (J.P.M.L. 2014); *In re Home Depot, Inc.* 65 F. Supp. 3d at 1400. These factors counsel in favor of centralization in the Middle District of Tennessee.

> A. **Change—the Victim of the Cyberattack—Is Headquartered in the Middle District of Tennessee and Much of the Evidence Is There.**

In cyberattack litigation, the Panel has frequently concluded that the district in which the *core defendant* maintains its corporate headquarters is the appropriate transferee forum. *See, e.g.*, *In re MOVEit Customer Data Sec. Breach Litig.*, 2023 WL 6456749, at *3 (selecting the headquarters of the defendant that was the victim of the cyberattack as the most appropriate transferee district); *In re Home Depot*, 65 F. Supp. 3d 1398 at 1400 (same); *In re Target*, 11 F. Supp. 3d at 1339 (same); *In re Zappos.com*, 867 F. Supp. 2d at 1358 (same); *In re Schnuck Mkts., Inc. Customer Data Sec. Breach Litig.*, 978 F. Supp. 2d 1379, 1381-82 (J.P.M.L. 2013) (same); *In re Sony Gaming Networks*, 802 F. Supp. 2d at 1371 (same); *In re TJX*, 493 F. Supp. 2d at 1383 (same). The core defendant here is Change. All 24 Actions name Change, and seven Actions name only Change. All complaints allege that Change suffered a ransomware attack and that Change services were disrupted. Even the allegations in Actions naming the other defendant entities make clear that Change—an only recently-acquired company of UHG—was the victim of the Cyberattack and therefore is the nucleus of Plaintiffs' claims.[6] *See, e.g.*, First Am. Compl. at ¶¶ 89-92, *Herrick v. UnitedHealth Group Incorporated, et al.*, No. 3:24-cv-00293, (M.D. Tenn. Mar. 22, 2024), ECF No. 12 (alleging that Change suffered a "data breach event" where its systems

---

[6] Indeed, there is no indication that any UHG, UHC, or Optum systems were affected by the Cyberattack. *See* Information on the Change Healthcare Cyber Response, UnitedHealth Group, https://www.unitedhealthgroup.com/ns/changehealthcare.html (*last visited* April 2, 2024) (under "Frequently Asked Questions").

were "accessed by cybercriminals"); Compl. at ¶ 85, *Castell v. Change Healthcare Inc., et al.*, No. 3:24-cv-00339 (M.D. Tenn. Mar. 25, 2024), ECF No. 1 (alleging the same).

The Panel's focus on the location of the defendant that was the victim of the cyberattack makes sense where, as here, numerous witnesses who were involved in incident response and cybersecurity are based in or around that defendant's headquarters. *See, e.g., In re Supervalu*, 67 F. Supp. 3d at 1378 ("[Defendant's] corporate headquarters is located within the district, and therefore relevant documents and witnesses are likely to be located there."); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 559 F. Supp. 2d 1405, 1406 (J.P.M.L. 2008) (same); *In re Sony Gaming Networks*, 802 F. Supp. 2d at 1371 (finding that "Sony employees who may have relevant knowledge of the breaches" may be found in the District where Sony was based). Indeed, here many relevant servers and many of the information technology and security personnel responding to the incident are based in Nashville.

### B. The Middle District of Tennessee Is Convenient and Accessible for All Parties.

The Middle District of Tennessee also is convenient for the parties. In deciding where to centralize litigation, the Panel considers whether a transferee district is centrally located and easily accessible. As relevant here, the Panel has previously determined that the Middle District of Tennessee is convenient and "geographically central" for parties in putative nationwide class actions, even as compared to a jurisdiction in the middle of the country and when plaintiffs hailed from both the East and West Coasts. *See, e.g.*, *In re RealPage, Inc.*, 669 F. Supp. 3d at 1373 (creating an MDL in the Middle District of Tennessee, where some parties advocated for consolidation in Washington, Texas, or Colorado, concluding that the "Middle District of Tennessee presents a geographically central, convenient, and accessible venue for this nationwide litigation").

The Middle District of Tennessee also affords out-of-town parties and counsel easy and convenient access to the court through the Nashville International Airport, which is only 9 miles away from the district courthouse. All major U.S. airlines fly in and out of the Nashville International Airport, with approximately 400 daily departures to over 100 nonstop destinations per day. Out-of-town parties will easily find accommodations in Nashville, with over 13,000 hotel rooms available in downtown Nashville and over 58,000 rooms in the broader Nashville Metropolitan Area. The centrality and easy accessibility of the Middle District of Tennessee supports centralization of the Actions in that district.

### C. A Majority of the Cases Have Been Filed in the Middle District of Tennessee.

The Middle District of Tennessee is also well-situated as the transferee forum because the greatest number of Actions have been filed there. 15 cases have been filed in the Middle District of Tennessee, representing over 60% of the Actions filed to-date. The Panel routinely considers where the majority of cases are pending in selecting a transferee forum. *See In re Home Depot*, 65 F. Supp. 3d 1398, 399-400 (finding the most appropriate transferee district was where 19 of the 31 actions were pending).

| Jurisdiction | Number of Actions Pending |
|---|---|
| Middle District of Tennessee | 15 |
| District of Minnesota | 3 |
| District of New Jersey | 2 |
| Northern District of California | 1 |
| Eastern District of California | 1 |
| Northern District of Mississippi | 1 |
| Western District of Pennsylvania | 1 |

10

While nine Actions have been filed in six other districts, none of those districts have stronger connections to the litigants or the allegations than the Middle District of Tennessee. Because 15 Actions have already been filed in the Middle District of Tennessee—more than any other jurisdiction—this factor weighs heavily in favor of transfer to the Middle District of Tennessee.

> **D.    The Middle District of Tennessee Is Well-Equipped to Adjudicate a Complex Multi-District Litigation Related to a Cyberattack.**

Centralization in the Middle District of Tennessee also is appropriate and beneficial because it "permits the Panel to assign this litigation to a less-utilized transferee forum with an experienced judge who has not yet overseen a multidistrict litigation"; here, Judge Richardson, who presides over the first-filed Action and the majority of the other Actions in the Middle District of Tennessee. *See In re RealPage, Inc.,* 669 F. Supp. 3d at 1373. There is currently only one MDL pending in the Middle District of Tennessee, yet the District has the resources to effectively manage a large, centralized action. *See* U.S. Panel on Multidistrict Litigation, MDL Statistics Report—Distribution of Pending MDL Dockets (March 1, 2024), https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-March-1-2024.pdf (listing *In re RealPage, Inc.,* MDL No. 3071, pending before Chief Judge Crenshaw). Judge Richardson, specifically, is an experienced jurist with the ability to steer this large and potentially complicated litigation on an efficient and prudent course. *See, e.g.*, *Damocles et al. v. Mitsubishi Motors N. Am., Inc.*, No. 3:22-CV-0001 (M.D. Tenn.) (consolidated cases); *Franchi v. SmileDirectClub, Inc., et al.*, No. 3:19-cv-00962 (M.D. Tenn.) (same).

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Panel transfer the Actions for centralized pretrial proceedings and submit that the relevant factors weigh strongly in favor of transfer to the Middle District of Tennessee before Judge Richardson.


Dated:  April 3, 2024                             By: */s/ Allison M. Ryan*
                                                  Allison M. Ryan
                                                  **HOGAN LOVELLS US LLP**
                                                  Columbia Square
                                                  555 Thirteenth Street, NW
                                                  Washington, DC 20004
                                                  T. (202) 637-5872
                                                  F. (202) 637-5910
                                                  allison.holt-ryan@hoganlovells.com

                                                  *Counsel for Change Healthcare Inc., UnitedHealth Group Incorporated., UnitedHealthcare, Inc., and Optum, Inc.*