BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: CHANGE HEALTHCARE, INC., CUSTOMER DATA SECURITY BREACH LITIGATION | MDL No. 3108 |

**INTERESTED PARTY RESPONSE BY PLAINTIFFS BAY AREA THERAPY GROUP A MARRIAGE AND FAMILY COUNSELING CORP., THERAPY MY WAY, THOMAS FRANCO THERAPY AND CONSULTING, REBECCA MEDINA, CAROL FRAKER, ERICA REYES, BRITTANY MEADOWS, AND DAVID CUSTIS IN SUPPORT OF MOTION FOR TRANSFER AND CENTRALIZATION OF RELATED ACTIONS**

Pursuant to 28 U.S.C. § 1407 and Rule 6.2(e) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Plaintiffs Bay Area Therapy Group a Marriage and Family Counseling Corp., Therapy My Way, Thomas Franco Therapy and Consulting, Rebecca Medina, Carol Fraker, Erica Reyes, Brittany Meadows, and David Custis (collectively, "Interested Parties")[1] respectfully submit this memorandum of law in support of the Motion for Transfer and Centralization of Related Actions to the Middle District of Tennessee Pursuant to 28 U.S.C. 1407 for Consolidated Pretrial Proceedings. Interested Parties also suggest that, in the alternative to the Middle District of Tennessee, the Northern District of California is also an appropriate transferee district.

---

[1] Bay Area Therapy Group a Marriage and Family Counseling Corp. filed the action titled, *Bay Area Therapy Group a Marriage and Family Counseling Corp. v. Change Healthcare Inc., et al.,* Case No. 3:24-cv-01682, on behalf of medical providers; Therapy My Way and Thomas Franco Therapy and Consulting filed the action titled, *Therapy My Way, et al. v. Change Healthcare Inc., et al.,* Case No. 3:24-cv-00345, on behalf of medical providers; Plaintiff Rebecca Medina filed the action titled, *Medina v. Change Healthcare Inc., et al.,* Case No. 2:24-cv-00766, on behalf of patients; and Plaintiffs Carol Fraker, Erica Reyes, Brittany Meadows, and David Custis filed the action titled, *Fraker, et al. v. Change Healthcare Inc., et al.,* Case No. 3:24-cv-00384, on behalf of patients.

1

## I. INTRODUCTION

Interested Parties are patients and medical providers residing throughout the United States who have sued Defendants Change Healthcare Inc. ("Change"), Optum, Inc. ("Optum"), and UnitedHealth Group Incorporated ("UHG") (collectively, "Defendants") for negligence and other causes of action arising from one of the largest and most consequential cybersecurity incidents in U.S. history. Currently, there are more than forty cases pending in eight different districts stemming from the cyberattack that began in February 2024, and which disrupted the delivery of care in the United States for weeks. Additional lawsuits are likely forthcoming as the consequences and disruptions continue. Recently, the Senate Finance Committee heard testimony from UHG's CEO, Andrew Witty, who testified that the company has yet to identify all the victims whose data was stolen or begin the process of notifying victims.

Interested Parties agree that the Panel should centralize for pretrial proceedings these important cases involving patients and medical providers in each of the fifty states. All the Related Cases share common questions of law or fact, and centralization will serve the convenience of the parties and witnesses and promote efficiency and economy. Additionally, centralization in the Middle District of Tennessee is appropriate. Interested Parties, however, also propose the Northern District of California as an alternative, should the Panel not select the Middle District of Tennessee as the transferee district.

## II. BACKGROUND

The Change cyberattack and Defendants' botched response has harmed as many as 110 million individuals and thousands of medical providers, large and small.[2] Patients suffered delays

---

[2] *See* https://www.hipaajournal.com/change-healthcare-responding-to-cyberattack/ (last visited May 14, 2024).

in obtaining treatment and had their personal identifying ("PII") and confidential personal health information ("PHI") compromised, placing them at an increased risk of identity theft. The class action complaints filed to date on behalf of patients (hereinafter, "Patient Plaintiffs") allege various claims, including for negligence, negligence *per se*, and violations of various consumer protection claims. The common questions presented by the claims of Patient Plaintiffs include whether Defendants owed them a legal duty to safeguard their PII and PHI and whether Defendants breached that duty.

Medical providers (hereinafter, "Medical Provider Plaintiffs") fall into two groups: those with direct contracts with Change, and those who obtained Change's services through third parties such as medical practice management companies. The Medical Provider Plaintiffs with contractual relationships with Change allege claims for breach of contract and violations of state consumer protection statutes, among others. Medical Provider Plaintiffs who do not have a contract with Change allege claims for negligence, unjust enrichment and for violations of state consumer protection statutes, among others. Common questions presented by the claims of Medical Provider Plaintiffs with contracts with Change include whether Defendants breached the contracts, and whether any of the limitations on damages are enforceable. Common questions presented by the claims of Medical Provider Plaintiffs without a direct contractual relationship with Change include whether Defendants owed them a legal duty, and whether that duty was breached, among others.

## III. THE RELATED ACTIONS SHOULD BE CENTRALIZED

Under 28 U.S.C. 1407(a), transfer and coordination are appropriate if civil actions pending in different districts involve "one or more common questions of fact" and if transfer

furthers "the convenience of [the] parties and witnesses and will promote the just and efficient conduct of such actions." *Id.*

While the Patient and Medical Provider Plaintiffs may have slightly distinct theories of liability, all their claims derive from a common factual core, namely, the cyberattack that occurred in February 2024 and related shutdown. The Panel has typically centralized cases arising from a data breach. *See In re: MOVEit Customer Data Sec. Breach Litig.,* 2023 WL 6456749, at *2 (J.P.M.L. Oct. 4, 2023); *In re: Equifax, Inc., Customer Data Sec. Breach Litig.,* 289 F. Supp. 3d 1322, 1324 (J.P.M.L. 2017); *In re: Yahoo! Inc. Customer Data Sec. Breach Litig.,* 223 F. Supp. 3d 1353, 1354 (J.P.M.L. 2016); *In re: Anthem, Inc., Customer Data Sec. Breach Litig.,* 109 F. Supp. 3d 1364, 1365 (J.P.M.L. 2015); *In re: Home Depot, Inc., Customer Data Sec. Breach Litig.,* 65 F. Supp. 3d 1398, 1399 (J.P.M.L. 2014).

Moreover, although each type of case will likely involve proposed class representatives from each of the fifty states given the nationwide scope of the cases and each type of case (patient versus medical provider) could conceivably be its own MDL due to the unique circumstances of each, such differences are not a bar to centralization. *See, e.g., In re: Home Depot, Inc.,* 65 F. Supp. 3d at 1399 (centralizing actions brought by both consumers and financial banks because they arose from a common core, notwithstanding that claims and defenses were not identical). The transferee judge has several management tools at its disposal and can create separate tracks for discovery and motion practice and order the filing of separate consolidated complaints.

Centralization of the Related Actions for pretrial proceedings in a single district will also promote "the just and efficient conduct of such actions." 28 U.S.C. 1407(a). Again, although Patient and Medical Provider Plaintiffs may have slightly different theories of liability, their

claims do overlap and so centralization will allow for coordinated discovery as to Defendants' policies and procedures for the safeguarding of PII and PHI, the cyberattack itself, the data that was compromised, and Defendants' response to the data breach and cyberattack, among other things.

Absent centralization, the Related Actions would proceed in at least eight districts and could result in inconsistent rulings about whether Defendants owed a legal duty to Plaintiffs, whether Defendants breached their duty to the Patient and Medical Provider Plaintiffs, and whether class certification is appropriate, among other issues. Accordingly, centralization will avoid duplicative discovery, inconsistent rulings, and conserve judicial and party resources.

## IV. TRANSFER TO THE MIDDLE DISTRICT OF TENNESSEE IS APPROPRIATE PURSUANT TO 28 U.S.C. § 1407

28 U.S.C. § 1407 authorizes the JPML to transfer actions sharing common questions of fact to a single district for coordinated or consolidated pretrial proceedings. The Interested Parties agree that transfer of the Related Actions to the Middle District of Tennessee would be appropriate. As stated in many of the filings, Change is headquartered in Nashville, where key witnesses and other evidence will likely be located. Interested Parties also agree that the district judges in the Middle District of Tennessee are quite capable of overseeing and managing this litigation efficiently and effectively.

## V. IN THE ALTERNATIVE, THE NORTHERN DISTRICT OF CALIFORNIA IS AN APPROPRIATE TRANSFEREE DISTRICT

Should the Panel decide not to transfer the cases to the Middle District of Tennessee, Interested Parties submit that the Northern District of California is also an appropriate district to oversee the Related Cases.

As discussed above, this sprawling litigation involves millions of patients and medical providers and touches multiple districts across the United States. *See In re: Anthem, Inc.,* 109 F. Supp. 3d at 1365; *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, & Products Liability Litig.*, 148 F. Supp. 3d 1367, 1369 (J.P.M.L. 2015). Change processes approximately 50% of all healthcare claims in the United States and, therefore affects patients and providers in every state in the country daily. UHG, Change's corporate parent and co-Defendant, maintains its headquarters in Minnesota, as does Optum. UHG has taken a significant role in the response to the data breach,[3] and appears to have directed many of the decisions that caused the massive disruptions and that harmed Interested Parties.

This is not a typical data breach class action/MDL because it involves the claims of both Patient and Medical Provider Plaintiffs and they are all over the country. The Medical Provider Plaintiffs will likely have to respond to more wide-ranging discovery than what is typical in data breach suits. Defendants likely will notice Rule 30(b)(6) depositions of the Medical Provider Plaintiffs and serve them with extensive written discovery about the impact of the cyberattack and response on their practices.

The Medical Provider Plaintiffs also anticipate taking third-party discovery of the medical management practice companies across the United States that relied on Change to process payments to the providers. Already, Interested Parties' preliminary investigation has revealed that these third parties (such as Kareo, CompuLink, SimplePractice, Tebra, and ChiroTouch), maintain their headquarters in California and around the country. These third parties likely have information about the contractual relationships with Change,

---

[3] *See* https://www.unitedhealthgroup.com/newsroom/2024/2024-04-22-uhg-updates-on-change-healthcare-cyberattack.html (last visited May 20, 2024).

representations that Change made regarding cybersecurity, and statements regarding Defendants' decisions to shut down their systems, regardless of the effect on downstream providers. Such information will be important to the claims for breach of contract and violations of consumer protection statutes.

Again, while the judges in the Middle District of Tennessee are quite capable of handling this litigation, the Northern District of California also has a history of resolving a number of large MDL cases, including those involving data breaches, such as *In re: Yahoo!* and *In re: Anthem*. In *In re: Anthem*, the Panel centralized the cases in the Northern District of California, (although Anthem maintained its headquarters in Indiana) based on the significant ties to California. Each of the Defendants here also has a considerable number of ties to California as they serve many patients and medical providers throughout the state.

## VI. CONCLUSION

Interested Parties support centralization in the Middle District of Tennessee, and in the alternative, respectfully request that the Panel centralize the Related Actions in the Northern District of California.

DATED: May 21, 2024

Respectfully submitted,

By: */s/ Rosemary M. Rivas*
Rosemary M. Rivas
David M. Berger
Rosanne L. Mah
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, CA 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
Email: rmr@classlawgroup.com
　　　　dmb@classlawgroup.com
　　　　rlm@classlawgroup.com

*Counsel for Plaintiffs and Interested Parties*

*Bay Area Therapy Group a Marriage and Family Counseling Corp., Therapy My Way, Thomas Franco Therapy and Consulting, Rebecca Medina, Carol Fraker, Erica Reyes, Brittany Meadows and David Custis*