**U.S. District Court**
**Northern District of Alabama (Northeastern)**
**CIVIL DOCKET FOR CASE #: 5:24-cv-00674-HNJ**

Trinity Medical Center LLC v. Change Healthcare Inc
Assigned to: Magistrate Judge Herman N Johnson, Jr
Cause: 28:1331 Fed. Question

Date Filed: 05/24/2024
Jury Demand: Plaintiff
Nature of Suit: 190 Contract: Other
Jurisdiction: Federal Question

**Plaintiff**

**Trinity Medical Center LLC**
*individually and on behalf of all others similarly situated*

represented by **Adam W Pittman**
CORY WATSON ATTORNEYS PC
2131 Magnolia Avenue South, Ste. 200
Birmingham, AL 35205
205-328-7000
Fax: 205-324-7896
Email: apittman@corywatson.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher T Hellums**
PITTMAN DUTTON & HELLUMS PC
2001 Park Place Tower
Suite 1100
Birmingham, AL 35203
205-322-8880
Fax: 205-278-2711
Email: chrish@pittmandutton.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David J. Hodge**
MORRIS KING & HODGE, PC
200 Pratt Avenue
Huntsville, AL 35801
256-536-0588
Email: dhodge@mkhlawyers.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Douglas A Dellaccio , Jr**
CORY WATSON PC
2131 Magnolia Avenue South, Suite 200
P O Box 55927
Birmingham, AL 35255-5972
205-328-2200
Fax: 205-324-7896
Email: ddellaccio@corywatson.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Frank Jerome Tapley**
CORY WATSON, P.C.
2131 Magnolia Avenue, Suite 200
Birmingham, AL 35205
205-328-2200
Fax: 205-324-7896
Email: jtapley@corywatson.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan S Mann**
PITTMAN DUTTON, HELLUMS, BRADLEY & MANN
2001 Park Place North, Ste. 1100
Birmingham, AL 35203
205-322-8880
Fax: 205-328-2711
Email: jonm@pittmandutton.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Change Healthcare Inc**

| Date Filed | # | Docket Text |
| --- | --- | --- |

| 05/24/2024 | 1 | COMPLAINT with **JURY DEMAND** against Change Healthcare Inc filed by Trinity Medical Center LLC.(AHI) (Entered: 05/28/2024) |
| 05/28/2024 | 2 | NOTICE of Assignment of Case to a United States Magistrate Judge for Trial (AHI) (Entered: 05/28/2024) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 05/28/2024 12:19:46 | | |
| **PACER Login:** | apittman | **Client Code:** | 0023-09999 |
| **Description:** | Docket Report | **Search Criteria:** | 5:24-cv-00674-HNJ |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

FILED

2024 May-28 PM 12:07
U.S. DISTRICT COURT
N.D. OF ALABAMA



## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| TRINITY MEDICAL CENTER, LLC, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>CHANGE HEALTHCARE INC.,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No. _____<br>)<br>)       CLASS ACTION<br>)    **JURY TRIAL DEMANDED**<br>) |

## CLASS ACTION COMPLAINT

Plaintiff TRINITY MEDICAL CENTER, LLC brings this action against Defendant CHANGE HEALTHCARE INC., both individually and on behalf of all others similarly situated ("Class Members"), and alleges:

### I. INTRODUCTION

1. This is a putative class action to remedy Defendant CHANGE HEALTHCARE's failure to timely and adequately process and pay the amounts due to medical providers for their services, including Plaintiff.

2. Defendant CHANGE HEALTHCARE INC. is a healthcare company that provides payment reimbursement and revenue services to medical providers across the country. On February 21, 2024, Defendant discovered its network was improperly secured and inadequately protected. These failures allowed

1

cybercriminals to access highly confidential and sensitive information, resulting in what is commonly known as a "Data Breach."

3.      As a result of these failures, Defendant CHANGE HEALTHCARE then "disconnected [its] systems to prevent further impact[.]" This disconnection essentially foreclosed medical providers like Plaintiff from essential services such as claim processing and payment for goods and services. Defendant's security failures and subsequent actions have harmed Plaintiff and similarly situated providers across the United States by stopping and disallowing payments for services and care.

## II.      PARTIES, VENUE AND JURISDICTION

4.      Plaintiff TRINITY MEDICAL CENTER, LLC ("TRINITY") is an Alabama limited liability company, and each of its members are citizens of Alabama and are not citizens of any other state.

5.      Defendant CHANGE HEALTHCARE INC. ("CHANGE HEALTHCARE") is a Delaware corporation with its principal place of business located at 424 Church St., Suite 1400, Nashville, TN 37219-2367. Defendant may be served through its registered agent, CT Corporation System, 300 Montvue Rd, Knoxville, TN 37919-5546.

6.      Pursuant to 28 U.S.C. § 1332(d)(2), this Court has original jurisdiction over the Plaintiff's and the Class Members' claims because minimum diversity of

citizenship exists between Defendant and members of the Class that Plaintiff seeks to represent, and the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

7. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to TRINITY's claims occurred within this Judicial District.

## III. FACTUAL ALLEGATIONS

8. Defendant CHANGE HEALTHCARE provides payment and revenue cycle services, clinical imaging services, and other services to its clients, including Plaintiff and members of the putative class.

9. CHANGE HEALTHCARE is the predominant source of more than 100 critical functions that keep the health care system operating. Among them, CHANGE HEALTHCARE manages the clinical criteria used to authorize a substantial portion of patient care and coverage, processes billions of claims, supports clinical information exchange, and processes drug prescriptions.

10. Defendant CHANGE HEALTHCARE is a subsidiary of UnitedHealth Group, which was recently the victim of the most significant cyberattack on the U.S. health care system in American History.

11. On February 21, 2024, Defendant CHANGE HEALTHCARE failed to prevent a cyberattack affecting many of its systems and services (the "Data

Breach"). As a result, significant portions of CHANGE HEALTHCARE's functionality have been crippled. As a result, patients have struggled to get timely access to care and billions of dollars have stopped flowing to providers, thereby threatening the financial viability of hospitals, health systems, physician offices, pharmacies, and other medical providers.

12. As a result of Defendant CHANGE HEALTHCARE'S failures, it disconnected its systems, making medical providers, including Plaintiff and Class Members, unable to submit claims and/or receive payment for their services. This disconnect has impacted Plaintiff and members of the putative class, specifically impacting these providers' revenue stream and ability to operate.

13. Plaintiff and Class Members are medical providers across the country who have suffered delays in processing claims and revenue cycle services as a result of the Data Breach.

14. On March 4, 2024, The American Hospital Associations ("AHA") stated in a letter[1] to Congress:

> We are now on day 13 of this crisis and urgently need your support to help minimize further fallout from this attack.
>
> Unfortunately, UnitedHealth Group's efforts to date have not been able to meaningfully mitigate the impact to our field. Workarounds to address prior authorization, as well as claims processing and payment

---

[1] *Available at:* https://www.aha.org/lettercomment/2024-03-04-aha-urges-congress-provide-support-help-minimize-further-fallout-change-healthcare-attack

are not universally available and, when they are, can be expensive, time consuming and inefficient to implement. For example, manually typing claims into unique payer portals or sending by fax machine requires additional hours and labor costs, and switching revenue cycle vendors requires hospitals and health systems to pay new vendor fees and can take months to implement properly.

In addition, UnitedHealth Group's "Temporary Funding Assistance Program"[2] that it stood up as part of its response on March 1 will not come close to meeting the needs of our members as they struggle to meet the financial demands of payroll, supplies and bond covenant requirements, among others.

15.     Defendant CHANGE HEALTHCARE allowed its data and systems to be encrypted by online criminals. Ransomware attacks are becoming more frequent, and results in the victim being unable to access its own data or systems.

16.     Defendant CHANGE HEALTHCARE should have taken proper precautions to prevent this action and protect its sensitive protected data.

17.     Defendant CHANGE HEALTHCARE failed to properly secure its networks and data in a reasonable and prudent manner.

18.     As a result of Defendant's failures, Plaintiff and Class Members have been denied funds that they have earned, compromising the revenue flow that is necessary for them to operate.

---

[2] *See* https://www.optum.com/en/business/providers/health-systems/payments-lending-solutions/optum-pay/temporary-funding-assistance.html (explaining Temporary Funding Assistance Program for providers)

19.     Specifically, Plaintiff and Class Members have not been paid the sums owed for the work they have already performed.

20.     Plaintiff and Class Members have been forced to borrow funds to maintain patient services, causing additional losses in the form of incurred interest on those loans.

21.     Plaintiff and Class Members have incurred additional losses through their attempts to have claims paid through paper invoices sent by mail due to the failure of Defendant's electronic services.

22.     Plaintiff and Class Members have incurred additional losses due to the costs of moving their businesses away from CHANGE HEALTHCARE and converting their businesses to utilize other service providers.

23.     Plaintiff and Class Members will continue to incur additional losses into the future.

## IV.    CLASS ALLEGATIONS

24.     Plaintiff brings this action individually and on behalf of all others similarly situated. Pursuant to FED. R. CIV. P. 23, the proposed Class is defined as:

> All health care providers who are citizens of a state other than Tennessee as of the date of this filing and who have suffered delays in claims processing and/or revenue services as a result of the data breach reported by Defendant.

Plaintiff also brings this action individually and on behalf of the following Sub-Class:

All health care providers who are citizens of Alabama as of the date of this filing and who have suffered delays in claims processing and/or revenue services as a result of the data breach reported by Defendant.

25.    Excluded from the Class and Sub-Class are: Defendant and Defendant's parents, subsidiaries, affiliates, officers, and directors and any entity in which Defendant has a controlling interest, all individuals or entities who make a timely election to be excluded from this proceeding using the correct protocol for opting out, any and all federal, state or local governments, including but not limited to its departments, agencies, divisions, bureaus, boards, sections, groups, counsel, and/or subdivisions, and all judges and/or judicial staff assigned to hear any aspect of this litigation, as well as their immediate family members.

26.    Plaintiff reserves the right to modify or amend the definition of the proposed Class and Sub-Class, if necessary, before this Court determines whether certification is appropriate.

27.    This case is properly brought as a class action under FED. R. CIV. P. 23 and all requirements are met for the reasons set forth in the following paragraphs.

28.    *Numerosity*: Under FED. R. CIV. P. 23(a)(1), a class action is necessary for the adjudication of this controversy. The members of the Class and Sub-Class are so numerous that joinder of all members is impractical. Plaintiff, upon information and belief, alleges that the total number of Class Members is in

the thousands. Membership in the Class will be determined by analysis of Defendant's records.

29.     *Commonality*: Pursuant to FED. R. CIV. P. 23(a)(2), Plaintiff and the Class Members share a community of interest in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

        a.     Whether Defendant breached its legal duty to Plaintiff and Class Members;

        b.     Whether Defendant was negligent in failing to implement reasonable and adequate security procedures and practices;

        c.     Whether Defendant took proper precautions to protect and secure its data and systems;

        d.     Whether Defendant failed to monitor and install adequate security measures to protect its data and systems;

        e.     Whether Defendant failed to comply with their own policies and applicable laws, regulations and industry standards relating to data security;

        f.     How and when Defendant learned of the Data Breach;

g.   Whether Defendant's actions and/or inactions led to the breach of their systems and resulting losses;

h.   If Defendant's actions post breach were appropriate and met industry standards;

i.   Whether Defendant has a special relationship with Plaintiff and Class Members;

j.   Whether Defendant has a contract with Plaintiff and Class Members, express or implied;

k.   Whether Defendant breached its contracts with Plaintiff and Class Members;

l.   Whether Plaintiff and Class Members are intended beneficiaries of Defendant's contracts with non-parties;

m.   Whether Defendant breached a contract with a non-party that was intended to benefit Plaintiff and Class Members;

n.   Whether Defendant was unjustly enriched when it took money from Plaintiffs and Class Members and failed to provide reasonable data security measures to protect it's data and systems;

  o. Whether Plaintiff and Class Members sustained damages as a result of Defendant's failure to secure and protect their data and systems; and,

  p. Whether Plaintiff and Class Members are entitled to actual and/or statutory damages and/or whether injunctive, corrective and/or declaratory relief and/or an accounting is/are appropriate and necessary to ensure Defendant implements reasonable security measures to protect against future data breaches as a result of Defendant's wrongful conduct.

30. ***Typicality***: Under FED. R. CIV. P. 23(a)(3), Plaintiff's claims are typical of the claims of the Plaintiff Class and Sub-Class. Plaintiff and all members of the Plaintiff Class and Sub-Class are all medical providers who sustained damages arising out of and caused by Defendant's common course of conduct in violation of law, as alleged herein.

31. ***Adequacy of Representation***: Plaintiff is an adequate representative for each Class and Sub-Class, for purposes of FED. R. CIV. P. 23(a)(4), in that Plaintiff has the same interest in the litigation of this case as the putative Class Members. Plaintiff has retained counsel who are experienced in class litigation. Plaintiff is not subject to any individual defenses unique other class members.

32. ***Predominance***: The questions of law and fact common to the Classes as set forth in the commonality allegation above predominate over any individual issues. As such, the "commonality" allegations are restated and incorporated herein by reference.

33. ***Superiority***: Class treatment is the superior method for litigating these issues. A data breach has impacted medical providers around the nation whose individual damages may make individualized litigation impractical and economically unfeasible. Defendant's conduct has affected all Class Members. That conduct was not individualized to class members. Multiple individual lawsuits throughout the country would impose an unnecessary strain on the court system, and could lead to inconsistent rulings among Class Members. The damages suffered by individual Class Members are significant but may be small relative to each member's enormous expense of individual litigation. This makes or may make it impractical for Class Members to seek redress individually for the wrongful conduct alleged herein. Even if Class Members could afford such individual litigation, the court system could not. Should separate actions be brought or be required to be brought by each individual member of the Plaintiff Class, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants. The prosecution of separate actions would also create a risk of inconsistent rulings which might be dispositive of the interests

of other Class Members who are not parties to the adjudications and/or may substantially impede their ability to protect their interests adequately. Individualized litigation increases the delay and expense to all parties and to the court system, presented by the case's complex legal and factual issues. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale and comprehensive supervision by a single court. Little or no individual litigation has been commenced over the controversies alleged in this Complaint and individual Class Members are unlikely to have an interest in separately prosecuting and controlling individual actions. The concentration of litigation of these claims in one action will achieve efficiency and promote judicial economy. The proposed class action is manageable.

34.     As a result, the proposed Class and Sub-Class meet the criteria for certification under Fed. R. Civ. P. 23(b)(3).

35.     The proposed Class and Sub-Class also meet the criteria for certification under Fed. R. Civ. P. 23(b)(2). Defendant has acted and/or refused to act on grounds generally applicable to Class Members such that final injunctive relief and/or corresponding declaratory relief is appropriate as to the Class and Sub-Class as a whole.

## V. CAUSES OF ACTION
### COUNT I
### NEGLIGENCE/WANTONNESS
**(Individually and on behalf of the Class and Sub-Class)**

36.     Plaintiff realleges the allegations above as if fully set forth herein.

37.     At all times herein relevant, Defendant owed Plaintiff and Class Members a duty of care, inter alia, to act with reasonable care to secure and safeguard that their claims and revenue cycle services would be processed on time and for the correct amounts. Defendant took on this obligation to use its computer systems and networks to ensure that proper claim submissions and payments of claims were to be made.

38.     Among these duties, Defendant was expected to provide claims processing and revenue cycle services to Plaintiff using safe and secure computer systems and networks.

39.     Defendant owed a duty of care to not subject Plaintiff and Class Members to an unreasonable risk of harm because Plaintiff and Class Members were foreseeable and probable victims of any inadequate security practices.

40.     Defendant knew or should have known of the vulnerabilities of its data security systems and the importance of adequate security. Defendant knew or should have known about numerous well-publicized data breaches.

41.    Defendant knew or should have known that its data systems and networks did not adequately safeguard the claims processing and revenue cycle services.

42.    Only Defendant was in the position to ensure that its systems and protocols were sufficient to protect Plaintiff's and Class Members' information.

43.    Defendant breached its duties to Plaintiff and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard the claims processing and revenue cycle services.

44.    Because Defendant knew that a breach of its systems could damage numerous individuals and entities, including Plaintiff and Class Members, Defendant had a duty to adequately protect its data and systems.

45.    Plaintiff's and Class Members' willingness to entrust Defendant with their processing needs was predicated on the understanding that Defendant would take adequate security precautions.

46.    Defendant also had independent duties under state and federal laws that required Defendant to reasonably safeguard Plaintiff's and Class Members' personal information and promptly notify them about the Data Breach.

47.    The law imposes an affirmative duty on Defendant to timely disclose the unauthorized access and Defendant's inability to process claims correctly and/or timely. Defendant failed to provide timely and clear notification of the Data

14

Breach to Plaintiff and Class Members. Defendant's failure prevented Plaintiff and Class Members from taking meaningful, proactive steps to secure processing needs, resulting in damages to Plaintiff and Class Members.

48.     Defendant's wrongful actions, inactions, and omissions constituted (and continue to constitute) common law negligence.

49.     Defendant's willful failure to abide by its duties was wanton and reckless in light of the foreseeable risks and known threats, and its actions were carried on with a reckless or conscious disregard of the rights of others, including Plaintiff and Class Members.

50.     As a proximate and foreseeable result of Defendant's negligent and wanton conduct, Plaintiff and Class Members have suffered damages and are at imminent risk of additional harm and damages.

51.     The damages Plaintiff and Class Members suffered (as alleged above) and will continue to suffer were and are the direct and proximate result of Defendant negligent and wanton conduct.

**COUNT II**
**BREACH OF CONTRACT**
**(Individually and on behalf of the Class and Sub-Class)**

52.     Plaintiff realleges the allegations above in paragraphs 1 through 35 as if fully set forth herein.

53.     Defendant, Plaintiff, and Class Members entered into contracts, either express or implied, for Defendant to implement data security and data processing functions adequate to safeguard and protect Plaintiff's and Class Members' claims processing and revenue cycle services materials.

54.     Defendant required Plaintiff and Class Members to provide and entrust their claims processing and revenue cycle services materials as a condition of obtaining Defendant's services.

55.     Defendant solicited and invited Plaintiff and Class Members to provide their claims processing and revenue cycle service materials as part of Defendant's regular business practices. Plaintiff and Class Members accepted Defendant's offers and provided their claim processing materials to Defendant.

56.     Plaintiff and Class Members provided and entrusted their claims processing and revenue cycle services materials to Defendant.

57.     Upon information and belief, Plaintiff and Class Members entered into express contracts that required the timely notification of services rendered and submission of invoices to Defendant and, in return, the timely payment of those invoices to Plaintiff and Class Members.

58.     In the alternative, Plaintiff alleges that Plaintiff and Class Members entered into implied contracts with Defendant through their course of conduct.

59.     Defendant agreed to ensure that Plaintiff's processing materials would not be defective or compromised, and that invoices would be timely paid upon being correctly submitted.

60.     A meeting of the minds occurred when Plaintiff and Class Members agreed to, and did, provide their claims processing and revenue cycle services materials to Defendant in exchange for, amongst other things, the protection of their materials and payment of those invoices.

61.     Plaintiff and Class Members fully performed their obligations under the contracts with Defendant.

62.     Defendant's breaches proximately caused economic and non-economic harm to Plaintiff and Class Members.

**COUNT III**
**BREACH OF CONTRACT – THIRD PARTY BENEFICIARY**
**(Individually and on behalf of the Class and Sub-Class)**

63.     Plaintiff realleges the allegations above in paragraphs 1 through 35 as if fully set forth herein.

64.     Upon information and belief, Defendant agreed to contracts with non-party health insurance providers, including government payors, to process claims submitted by Plaintiff and Class Members and to render payment of those claims to Plaintiff and Class Members.

17

65.     Plaintiff and Class Members, as the persons Defendant was contractually obligated to be pay according to the terms of these contracts, are intended beneficiaries of these contracts.

66.     Pursuant to the terms of these contracts, Defendant agreed to ensure that Plaintiff's and Class Members' processing materials would not be defective or compromised, and that invoices would be timely paid upon being correctly submitted.

67.     Defendant's actions breached these contracts, proximately causing economic and non-economic harm to Plaintiff and Class Members.

**COUNT IV**
**UNJUST ENRICHMENT**
**(Individually and on behalf of the Class and Sub-Class)**

68.     Plaintiff realleges the allegations above in paragraphs 1 through 35 as if fully set forth herein.

69.     Upon information and belief, Defendant funds its data and systems security measures entirely from its general revenue, including payments made by or on behalf of Plaintiff and Class Members.

70.     As such, a portion of the payments made by or on behalf of Plaintiff and Class Members is to be used to provide a reasonable level of data security, and the amount of each payment allocated to data security is known to Defendant.

71.     Plaintiff and Class Members conferred a monetary benefit to Defendant. Specifically, they purchased goods and services from Defendant and/or their agents and provided Defendant with their claims processing and revenue cycle service materials. In exchange, Plaintiff and Class Members should have received from Defendant the goods and services that were the subject of the transaction and have their processing and service materials protected with adequate data security.

72.     Defendant knew that Plaintiff and Class Members conferred a benefit which Defendant accepted. Defendant profited from these transactions and used the claims processing and revenue cycle service materials of Plaintiff and Class Members for business purposes.

73.     Defendant enriched themselves by saving the costs it reasonably should have expended in data security measures to secure Plaintiff's and Class Members' claims processing materials. Instead of providing a reasonable level of security that would have prevented the hacking incident, Defendant instead calculated to increase their own profits at the expense of Plaintiff and Class Members.

74.     Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and Class Members,

because Defendant failed to implement appropriate data management and security measures mandated by industry standards.

75.     If Plaintiff and Class Members knew that Defendant had not reasonably secured their claims processing materials and data systems, they would not have agreed to provide their personal information or patient's health information to Defendant.

76.     As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

77.     Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that it unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiff and Class Members overpaid for Defendant's services.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff TRINITY MEDICAL CENTER, individually, and on behalf of the Class and Sub-Class, respectfully requests that the Court enter judgment in their favor and for the following specific relief against Defendant as follows:

> a. Certifying this action as a class action as provided by Fed. R. Civ. P. 23;

b. For an award of damages, including actual, nominal, and consequential damages, as allowed by law in an amount to be determined;

c. That the Court enjoin Defendant, ordering it to cease and desist from similar unlawful activities;

d. For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class Members;

e. For injunctive relief requested by Plaintiff, including but not limited to injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members;

f. For prejudgment interest on all amounts awarded, at the prevailing legal rate;

g. For an award of attorney's fees, costs, and litigation expenses, as allowed by law;

h. For all other Orders, findings and determinations identified and sought in this Complaint; and

i. Awarding such other and further relief as the Court may deem just and proper.

## VII.   JURY DEMAND

Plaintiff, individually and on behalf of all Class Members, demands a trial by struck jury on all issues so triable.

Respectfully submitted,

Dated: May 24, 2024              **CORY WATSON, P.C.**

*/s/ Adam W. Pittman*
F. Jerome Tapley

(ASB-9085-T65W)
Douglas A. Dellaccio, Jr.
(ASB-4578-L75D)
Adam W. Pittman
(ASB-0146-A33P)
2131 Magnolia Avenue, Suite 200
Birmingham, AL 35205
(205) 328-2200
(205) 324-7896, fax
jtapley@corywatson.com
ddellacio@corywatson.com
apittman@corywatson.com

David J. Hodge (ASB-4617-I71H)
**MORRIS, KING & HODGE, P.C.**
200 Pratt Avenue, NE
Huntsville, Alabama 35801
(256) 536-0588 / Fax (256) 533-1504
dhodge@mkhlawyers.com

Chris T. Hellums (ASB-5583-L73C)
Jonathan S. Mann (ASB-1083-A36M)
**PITTMAN, DUTTON, HELLUMS,
BRADLEY & MANN, P.C.**
2001 Park Place North, Suite 1100
Birmingham, AL 35203
Tel: (205) 322-8880
Fax: (205) 328-2711
Email: chrish@pittmandutton.com
Email: jonm@pittmandutton.com