**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE: CHANGE HEALTHCARE, INC., CUSTOMER DATA SECURITY BREACH LITIGATION** | **MDL No. 3108** |

**DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-36)**

Defendant Change Healthcare, Inc. ("Defendant" or "Change") opposes the Motion to Vacate Transfer Order and Remand ("the Motion") filed by Plaintiffs' Advanced Billing Consultants, Inc. ("Plaintiff ABC"), Alamance Eye Center, P.A. ("Plaintiff Alamance"), Dentfirst, P.C. ("Plaintiff Dentfirst"), Dexios Corporation ("Plaintiff Dexios"), and Reus Services Valued Professionals, Inc.'s ("Plaintiff RSVP") (collectively "Plaintiffs") Motion to Vacate Transfer Order and Remand (the "Motion"). Plaintiffs do not—and cannot—argue that their claims are any different from the dozens of other cases related to the February 2024 Cyberattack on Change (the "Cyberattack") that this Panel has already transferred to the Change MDL. Instead, Plaintiffs argue that transfer was inappropriate because of a Motion for Remand in the transferor court, which has since been denied. *See* Mem. Op. and Order at 2, *Reus Servs. Valued Pros., Inc. v. Change Healthcare Inc.*, No. 3:26-cv-00337 (M.D. Tenn. Apr. 28, 2026), attached as **Exhibit A**. In fact, the transferor court noted that it would "be a poor use of judicial resources" and "pose a substantial risk of inconsistent judicial orders" to consider Plaintiffs' jurisdictional challenges outside of the Change MDL. *Id.* at 10–11. Plaintiffs' Motion to Vacate CTO-36 should be denied.

## I. BACKGROUND

### A. The Cyberattack and MDL

Change, a subsidiary of UnitedHealth Group Incorporated ("UHG"), works across the health system to make clinical, administrative, and financial processes simpler and more efficient

for consumers, providers, and payers. On February 21, 2024, Change detected that an unauthorized actor had gained access to the Change environment (the "Cyberattack"). Change took prompt action to contain the incident.

Despite Change's efforts to assist those potentially affected by the Cyberattack, plaintiffs from across the country filed a wave of lawsuits against Change (and other affiliated entities in the corporate family of UHG, including UnitedHealthcare Inc., Optum Inc., OptumInsight, Inc., Change Healthcare Solutions, LLC, and Change Healthcare Technology Enabled Services, LLC (collectively, the "Change Defendants")), arising out of the Cyberattack. Suits were brought both by individual consumers as well as by a wide variety of entities in the healthcare ecosystem, including healthcare providers, pharmacies, and billing entities, alleging harms primarily stemming from the disruption of services post-Cyberattack. The MDL Court split these categories of plaintiffs into two "tracks" thus far: one for individuals with data breach claims, and one for providers with claims arising from the service disruption (collectively, the "MDL Plaintiffs"). *In Re: Change Healthcare, Inc. Customer Data Security Breach Litig.*, No. 0:24-md-03108-DWF-DJF (D. Minn.), ECF No. 54.

The MDL Plaintiffs proposed a leadership structure that aligns with this two-track approach and was approved by the transferee court. *Id.*, ECF No. 83. The provider track plaintiffs allege (1) their services were disrupted due to the Cyberattack; (2) they were unable to submit insurance claims and payments were either delayed or denied due to the Cyberattack; (3) they have experienced harms including economic losses; (4) Change communicated inadequately about the shutdown; and (5) they suffered damages. *See* Provider Master Compl., Change MDL, ECF No. 407 ("Provider Master Compl.") at ¶¶ 89–145.

### B. Plaintiffs

#### i. Advanced Billing Consultants, Inc.

Plaintiff ABC is an "independent revenue cycle management compan[y]" that "provid[es] billing, claims submission, reimbursement, and accounts receivable services to healthcare providers." Mot. at 5; Notice of Removal, Ex. A at ¶ 24, *Advanced Billing Consultants, Inc. v. Change Healthcare, Inc.*, No. 3:26-cv-00338, (M.D. Tenn. Mar. 20, 2026), ECF No. 1-1 ("ABC Compl."). Plaintiff ABC asserts claims for negligence, negligence *per se*, and unjust enrichment based on the temporary disruption of Change's services due to the Cyberattack ABC Compl. ¶¶ 93–147. Furthermore, Plaintiff ABC alleges that "[t]he Change Healthcare Data Breach disrupted Plaintiff's billing operations and reimbursement processes." *Id.* at ¶ 70. Plaintiff ABC's claims undeniably overlap with the claims asserted by the MDL Provider plaintiffs.

#### ii. Alamance Eye Center, P.A.

Plaintiff Alamance is a healthcare provider that contracted with third parties using Change's "products to submit bills and/or reimbursement forms" on Plaintiff Alamance's behalf. Mot. at 5; Notice of Removal, Ex. A at ¶ 96, *Alamance Eye Center, P.A. v. Change Healthcare, Inc.*, No. 3:26-cv-00344 (M.D. Tenn. Mar. 23, 2026), ECF No. 1-1 ("Alamance Compl."). Plaintiff Alamance asserts claims for negligence, "third party beneficiary," and unjust enrichment based on the temporary disruption of Change's services due to the Cyberattack. *Id.* ¶¶ 105–30. Plaintiff Alamance's claims also overlap with the claims asserted by the MDL provider plaintiffs.

#### iii. Dentfirst, P.C.

Plaintiff Dentfirst is a healthcare provider that contracted with third parties using Change's "products to submit bills and/or reimbursement forms" on Plaintiff Dentfirst's behalf. Mot. at 5; Notice of Removal, Ex. A at ¶ 96, *Dentfirst, P.C. v. Change Healthcare, Inc.,* No. 3:26-cv-00339,

Notice of Removal (M.D. Tenn. Mar. 20, 2026), ECF No. 1-1 ("Dentfirst Compl."). Plaintiff Dentfirst asserts claims for negligence, "third party beneficiary," and unjust enrichment based on the temporary disruption of Change's services due to the Cyberattack. *Id.* at ¶¶ 105–31. Plaintiff Dentfirst's claims overlap with the claims asserted by the MDL provider plaintiffs.

**iv. Dexios Corporation**

Plaintiff Dexios "operates as an independent revenue cycle management ("RCM") company providing billing and collections services to radiology practices." Notice of Removal, Ex. A at ¶ 24, *Dexios Corporation v. Change Healthcare, Inc.*, No. 3:26-cv-00340, (M.D. Tenn. Mar. 20, 2026), ECF No. 1-1 ("Dexios Compl."). Plaintiff Dexios asserts claims for negligence, gross negligence, negligence *per se*, tortious interference with business relationships and business expectancies, and unjust enrichment based on the temporary disruption of Change's services due to the Cyberattack. *Id.* ¶¶ 96–150. Plaintiff Dexios' claims overlap with the claims asserted by the MDL provider plaintiffs.

**v. Reus Services Valued Professionals, Inc.**

Plaintiff RSVP is an "independent revenue cycle management company[y]" that "provide[s] billing, claims submission, reimbursement, and accounts receivable services to healthcare providers." Mot. at 5; Notice of Removal, Ex. A at ¶ 24, *Reus Services Valued Professionals, Inc. v. Change Healthcare, Inc.*, No. 3:26-cv-00337 (M.D. Tenn. Mar. 20, 2026), ECF No. 1-1 ("RSVP Compl."). Plaintiff RSVP asserts claims for negligence, gross negligence, negligence *per se*, tortious interference with business relationships and business expectancies, and unjust enrichment based on the temporary disruption of Change's services due to the Cyberattack. *Id.* ¶¶ 93–147. Plaintiff RSVP's claims overlap with the claims asserted by the MDL provider plaintiffs.

### C. Procedural History

On March 13, 2024, several plaintiffs in cases stemming from the Cyberattack moved this Panel to transfer and centralize those actions. ECF No. 2 (the "Transfer Motion"). Change, along with other related entities that had been named in these cases, filed a response to the Transfer Motion, supporting transfer and centralization. ECF No. 56. On June 7, 2024, the Panel granted the Transfer Motion, creating the Change MDL. ECF No. 158. Thus far, 42 Conditional Transfer Orders have been issued, and including cases originating in the District of Minnesota, over 100 are now part of the MDL.

On February 22, 2026, Plaintiffs ABC, Alamance, Dentfirst, and Dexios filed suit in the Circuit Court for Davidson County, Tennessee. Mot. at 2–3.; Notice of Removal, *Advanced Billing Consultants v. Change Healthcare, Inc.*, No. 3:26-cv-00338, (M.D. Tenn. Mar. 20, 2026), ECF No. 1; Notice of Removal, *Alamance Eye Center, P.A. v. Change Healthcare, Inc.*, No. 3:26-cv-00344, (M.D. Tenn. Mar. 23, 2026), ECF No. 1; Notice of Removal, *Dentfirst, P.C. v. Change Healthcare, Inc.*, No. 3:26-cv-00339, (M.D. Tenn. Mar. 20, 2026), ECF No. 1; and Notice of Removal, *Dexios Corporation v. Change Healthcare, Inc.*, No. 3:26-cv-00340, (M.D. Tenn. Mar. 20, 2026), ECF No. 1. On March 6, 2026, Plaintiff RSVP also filed suit in the Circuit Court for Davidson County, Tennessee. Mot. at 3–4; Notice of Removal, *Reus Services Valued Professionals, Inc. v. Change Healthcare, Inc.*, No. 3:26-cv-00337 (M.D. Tenn. Mar. 20, 2026), ECF No. 1 (all five cases are collectively referred to herein as "the Tennessee Actions"). On March 20 and March 23, 2026, Defendants filed Notices of Removal in the United States District Court for the Middle District of Tennessee based on diversity jurisdiction. *Id.*

On March 25, 2026, Plaintiffs filed Motions to Remand in the Middle District of Tennessee, arguing that Change was a citizen of Tennessee and thus not entitled to remove under

the forum defendant rule. Mot. at 4. Also on March 25, 2026, Change filed a "Notice of Potential Tag-Along Actions" with the Panel to initiate a transfer of the Tennessee Actions to the MDL. ECF No. 588. Change also moved to stay each of the Tennessee Actions pending a decision on transfer by the Panel. Ex. A at 1. On March 30, 2026, the Panel issued CTO-36 directing that the Tennessee Actions be transferred to the Change MDL. ECF No. 591. Plaintiffs filed an objection to CTO-36 on April 6, 2026, ECF No. 599, and on April 21, 2026, subsequently filed a notice of opposition and motion to vacate CTO-36. ECF No. 622.

On April 28, 2026, the Middle District of Tennessee court granted Change's Motion to Stay and denied Plaintiffs' Motion to Remand the Tennessee Actions. Ex. A at 2. The transferor court noted that the Tennessee Actions raise "complex" jurisdictional questions regarding Change's citizenship that substantially overlap with issues in the Change MDL. Ex. A at 10.

## II. ARGUMENT

The Panel created the Change MDL to "serve the convenience of the parties and witnesses" and "avoid the possibility of inconsistent pretrial rulings" given that the various MDL claims "all arise from the same data breach, and all will involve discovery into the circumstances and consequences of that breach." ECF No. 158 at 2. The Panel explicitly applied that reasoning to a wide range of claims, including those by entities that claim injury based on their inability to use the Change Defendants' services. *Id*. Plaintiffs' claims here, like the other claims in the Change MDL, (i) are significantly based on, and are inextricably linked to, the Cyberattack and (ii) are anticipated to require discovery from Change as to the circumstances and consequences of that breach and the subsequent restoration.

The Tennessee Actions should be transferred to the Change MDL because they are related to the Cyberattack, are premised on similar alleged harms, and allege the same legal theories as

the MDL claims. Furthermore, including Plaintiffs' claims in the Change MDL will enhance the convenience of the parties and prevent the possibility of duplicative discovery.

### A. The Tennessee Actions Arise Out of the Cyberattack and Overlap with the MDL Plaintiffs' Allegations

Plaintiffs argue that, despite the similar common core of the Cyberattack, and the factual and legal overlap between their claims and those in the MDL, there are nonetheless distinctions that should bar centralization. Specifically, the Plaintiffs suggest their action is distinct because (1) they are awaiting the district court's decision on their Motion to Remand; and (2) transfer of the actions does not promote efficiency or just conduct of Plaintiffs' claims. Mot. 7–8. Neither of these arguments hold water.

*First*, the Motion to Remand that Plaintiffs raise in their motion to vacate has already been denied. *See* Ex. A. In any case, a pending Motion for Remand is not a basis for denying transfer because the issue "can be presented to and decided by the transferee judge." Transfer Order, ECF No. 440 at 2 (quoting *In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 170 F. Supp. 2d 1346, 1347 (J.P.M.L. 2001)).

*Second,* there are "common questions of fact" between the Tennessee Actions and the Change MDL, 28 U.S.C. § 1407, as Plaintiffs concede. Mot. at 6. Transferring the Tennessee Actions to the Change MDL would avoid inconsistent rulings and promote the convenience of the parties. *See, e.g.*, *In re Home Depot, Inc. Customer Data Sec. Breach Litig.*, 65 F. Supp. 3d 1398, 1399–400 (J.P.M.L. 2014) (centralizing where actions brought by consumers and financial institutions arose "from a common factual core—namely, the Home Depot data breach."). The complaints in the Tennessee Actions arise out of and concern the Cyberattack, just like the claims in the MDL. Plaintiffs here allege that their contracted-for-services were interrupted by the Cyberattack. Compare ABC Compl. at ¶¶ 60–73; Alamance Compl. at ¶¶ 79–82; Dentfirst Compl.

at ¶¶ 79–82; Dexios Compl. at ¶¶ 64–72, and RSVP Compl. at ¶¶ 63–71 (alleging that due to the Cyberattack and Change's disconnection of the Change Platform, Plaintiff was unable to access essential data and systems under their agreements with Change), with Provider Master Compl. ¶¶ 471–98 ("Change's failure to act in good faith in implementing the security measures required by the contracts also caused Direct Contract Plaintiffs and Change Healthcare Inc. Direct Contract Sub-Class members to suffer actual damages including a loss or delay of substantial income resulting from the shutdown of the Change Platform"); *Lemke v. Change Healthcare Inc.*, No. 3:24-cv-00302 (M.D. Tenn. Mar. 18, 2024), ECF No. 47, at ¶ 5 (alleging "disruption to their access to Defendants' networks and transactional services, including the loss of access to Defendants' insurance claims clearinghouse and losses of income from insurance claims."). As a result, there are overlapping questions of fact regarding how the Cyberattack occurred, the extent to which services were disrupted, and the steps Change took to restore access to insurance and other information stored on the Change platform.

This Panel emphasized the importance of common questions of fact when it created the Change MDL. ECF No. 158 at 2 ("The actions share common questions of fact" arising from the Cyberattack). Plaintiffs are similarly situated to other plaintiffs in the MDL that likewise allege harm resulting from the loss of access to their contracted-for-services. The JPML has long noted the wisdom of centralizing cases arising from a single data breach as a common factual core, even without as high a degree of overlap as exists between the Tennessee Actions and the other MDL cases. *See, e.g.*, *In re Marriott Int'l, Inc.*, *Customer Data Sec. Breach Litig.*, 363 F. Supp. 3d 1372, 1374 (J.P.M.L. 2019) (centralizing cases despite "unique claims, and some unique factual issues" based on "overlapping factual issues and discovery").

The Panel has also acknowledged that a key factor in centralization is that "the injuries asserted . . . are the same injuries asserted against the Change Healthcare defendants by most, if not all," of the other similar plaintiffs. Transfer Order, ECF No. 196 at 2. Here, Plaintiffs assert virtually identical claims for relief as the MDL provider plaintiffs, including negligence (*compare* Alamance Compl. ¶¶ 105–18 *with* Provider Master Compl. ¶¶ 447–59), negligence *per se* (*compare* Dexios Compl. ¶¶ 112–28 *with* Provider Master Compl. ¶¶ 460–71), unjust enrichment (*compare* ABC Compl. ¶¶ 126–31 *with* Provider Master Compl. ¶¶ 515–20), and interference with prospective economic advantage, business relationship, or expectancy (*compare* RSVP Compl. ¶¶ 132–47 *with* Provider Master Compl. ¶¶ 521–29). These and similar claims alleging service disruptions and resulting damage due to the Cyberattack have all been centralized into the Change MDL, and Plaintiffs' claims and alleged damages should not be treated any differently.

### B. Plaintiffs' Attempts to Downplay the Efficiencies of Consolidation with the MDL Are Not Persuasive

The purpose of centralizing pretrial proceedings is to enhance the "convenience of parties and witnesses" and the "just and efficient conduct of such actions," 28 U.S.C § 1407(a), and a key element of enhancing the convenience of the parties is avoiding duplicative discovery and conserving party resources. ECF No. 158 at 2 (noting that discovery in all actions would focus on similar facts); *see also In re MOVEit Customer Data Sec. Breach Litig.*, 699 F. Supp. 3d 1402, 1405 (J.P.M.L. 2023) (centralization will "reduce duplicative discovery" and "conserve the resources of the parties, their counsel, and the judiciary"); *In re Juul Labs*, Inc., 396 F. Supp. 3d 1366, 1367 (J.P.M.L. 2019) (same). Failing to transfer the Tennessee Actions to the MDL would cut against the Panel's purposes in creating the MDL and force Change to engage in burdensome duplicative discovery.

Relatedly, there is a risk of inconsistent pretrial rulings if this case is not transferred. *See* 28 U.S.C. § 1407; EFC No. 158 at 2. Separate proceedings create the possibility of inconsistent rulings on dispositive motions pertaining to the overlapping causes of action in the Change MDL and the Tennessee Actions. Centralization will also avoid the possibility of inconsistent discovery rulings, particularly regarding attorney-client privilege and work product protection. Given the similarities between Plaintiffs' cyberattack-based claims and the claims already present in the Change MDL, rejecting consolidation for the Tennessee Actions is likely to lead to duplicative discovery.

Plaintiffs argue that "[t]ransfer of these Actions will cause delay and unnecessary costs rather than allowing the Parties to focus on the relationships and damages in the Actions." Mot. at 7. This Panel has previously rejected arguments opposing a transfer based on inconvenience or additional costs to the plaintiff alone. *See, e.g.*, Transfer Order, ECF No. 233 at 2 (holding that transfer was proper based on "the overall convenience of the parties and witnesses" rather than the interests "of a single plaintiff or defendant in isolation") (quoting *In re Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d 1350, 1351–52 (J.P.M.L. 2012)). Centralization is for pretrial purposes only —Plaintiffs will still have the opportunity to try the Tennessee Actions in the Middle District of Tennessee, to the extent their claims survive pretrial proceedings.

In sum, the Panel should transfer the Tennessee Actions – to hold otherwise would defeat the purpose of the Panel in creating the Change MDL, run counter to the purpose of centralization under Section 1407, and "complicate, rather than clarify, this already complex litigation." *In re MOVEit*, 699 F. Supp. 3d at 1406 n.6.

## **CONCLUSION**

For these reasons, the Panel should deny Plaintiffs' Motion and finalize CTO-36.

Dated: May 12, 2026

Respectfully submitted,

*/s/ Allison M. Ryan*
Allison M. Ryan
Hogan Lovells US LLP
555 13th Street NW
Washington, D.C. 20004
T. (202) 637-5600
F. (202) 637-5910
allison.holt-ryan@hoganlovells.com

*Counsel for Defendant Change Healthcare Inc.*