**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE CHANGE HEALTHCARE, INC., CUSTOMER DATA SECURITY BREACH LITIGATION | **MDL No. 3108** |
| *Radiology Associates of Roanoke, P.C. et al v. Optum, Inc. et al.*, W.D. Virginia, C.A. No. 7:26-cv-00527-EKD-CKM | |

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO VACATE
CONDITIONAL TRANSFER ORDER (CTO-48)**

Plaintiffs Radiology Associates of Roanoke, P.C. ("RAR") and Montgomery Radiology Associates, Inc. ("MRA") (collectively, "Plaintiffs") respectfully move this Panel, pursuant to Panel Rule 7.1(g) and 28 U.S.C. Section 1407(a), to vacate Conditional Transfer Order No. 48 ("CTO-48") issued in *Radiology Associates of Roanoke, P.C. et al v. Optum, Inc. et al.*, W.D. Virginia, C.A. No. 7:26-cv-00527-EKD-CKM (the "Action")[1], which conditionally transferred the Action to the U.S. District Court for the District of Minnesota (the "District Court") as part of MDL No. 3108 ("MDL"). Plaintiffs respectfully show as follows:

**INTRODUCTION**

The MDL is centered on the February 2024 cyberattack, Defendants' cybersecurity practices, and the resulting system-wide disruption. This Action is different. Plaintiffs' principal negligence claim arises from Defendants' responsibility to maintain MRA's Medicare-enrollment information, monitor CMS correspondence, and timely transmit enrollment notices. Those duties were assumed years before the cyberattack and exist wholly independent of any cybersecurity

---

[1] Plaintiffs' Complaint is attached hereto as Exhibit A.

issue. Liability will turn on provider-specific facts, witnesses, and documents unrelated to ransomware vulnerabilities, network security, data exposure, or system restoration. Plaintiffs' TFAP-related claims likewise involve distinct provider-specific agreements, representations, payment histories, and repayment obligations that will need to be resolved through individualized proof concerning Defendants' dealings with these Plaintiffs—not through the common cybersecurity discovery driving the MDL. Rather than promoting efficiency, transfer would force these provider-specific claims into an MDL built around materially different factual issues.

**FACTUAL BACKGROUND**

Plaintiffs are Virginia radiology providers that relied on Defendants Optum, Inc. ("Optum"), Change Healthcare, Inc. ("Change"), and UnitedHealth Group Incorporated ("UHG") (collectively, "Defendants") to perform critical billing, payment-processing, and administrative functions. That provider relationship existed independently of the February 2024 cyberattack and included Defendants' independent duty to manage important aspects of MRA's Medicare enrollment.

Years before the cyberattack, Defendants assumed provider-specific Medicare enrollment responsibilities for MRA. Through a lockbox arrangement and their designation as MRA's billing agent within CMS' Medicare Provider Enrollment, Chain, and Ownership System ("PECOS"), Defendants undertook responsibility for receiving, monitoring, and transmitting Medicare correspondence on MRA's behalf. MRA relied on Defendants to perform those functions.

Defendants failed to fulfill those responsibilities. Despite knowing that former employee John Mangels remained listed in MRA's Medicare enrollment records following his felony conviction, Defendants failed to correct the enrollment records. On April 10, 2024, CMS issued a notice revoking MRA's Medicare enrollment, retroactive to February 25, 2019. That notice was

transmitted through the lockbox arrangement controlled by Defendants and advised that MRA had only sixty-five (65) days to seek reconsideration. Defendants did not notify MRA of the revocation until after that deadline had expired, depriving MRA of any opportunity to challenge the revocation. Although Defendants' failure to transmit the April 10, 2024 CMS revocation notice occurred after the cyberattack, it arose from the same provider-enrollment responsibilities Defendants had undertaken years earlier.

MRA later discovered that critical CMS correspondence had been linked to the personal email address of a former Change employee and had never been updated. As a result, MRA lost its Medicare enrollment, lost its opportunity to seek reconsideration, lost hospital relationships, faced regulatory exposure, incurred substantial financial losses, and underwent a six-month reenrollment process.

The cyberattack later compounded Plaintiffs' injuries in a different way. Like many providers, RAR and MRA experienced claims-processing disruptions and participated in the Temporary Funding Assistance Program ("TFAP") to remain operational. Defendants induced Plaintiffs to rely on TFAP funding as a financial lifeline during the crisis. As claims remained delayed, unprocessed, or unpaid, Defendants demanded repayment and began offsetting current reimbursements against disputed balances. Those claims turn on Defendants' representations to Plaintiffs, Plaintiffs' payment histories, and Defendants' handling of Plaintiffs accounts—not on whether Defendants maintained adequate cybersecurity safeguards or properly responded to the ransomware attack.

Although the cyberattack forms part of the factual background, this Action is driven by Defendants' provider-specific conduct toward these Plaintiffs before, during, and after the attack. Resolution of Plaintiffs' claims will require evidence concerning Defendants' Medicare-enrollment

responsibilities, CMS communications, TFAP dealings, payment histories, and reimbursement decisions unique to Plaintiffs—not the common cybersecurity discovery driving the MDL.

**LEGAL STANDARD**

This Panel may transfer civil actions that "involv[e] one or more common questions of fact" that are pending in different districts to any single district for coordinated or consolidated pretrial proceedings. § 1407(a). Transfer is only proper where three requirements are met: (1) there is a common question of fact between the actions, (2) transfer would serve the convenience of the parties and witnesses, and (3) transfer would promote the just and efficient conduct of the litigation. *Id.*

A conditional transfer order is "simply an administrative act of the Clerk which can be and will be vacated upon the showing of good cause by any party." *In re Grain Shipments*, 319 F. Supp. 533, 534 (J.P.M.L. 1970). Good cause exists here because any overlap concerns general background facts, while the disputed liability questions and necessary discovery are provider-specific and largely independent of the issues being coordinated in the MDL.

**ARGUMENT**

**A. Plaintiffs' Action Does Not Share the Common Questions of Fact Necessary for Transfer.**

The existence of some common facts does not make transfer appropriate. The question is whether coordinated proceedings will materially advance resolution of the case. Here, they will not.

The MDL focuses on the February 2024 cyberattack and Defendants' cybersecurity failures. Plaintiffs' negligence claim does not. MRA's negligence claim arises from a separate operational relationship between Defendants and MRA that existed long before the cyberattack. The relevant duties concern Medicare-enrollment administration and CMS-correspondence management—not

4

cybersecurity. Whether Defendants maintained accurate enrollment records, monitored CMS communications, and timely transmitted CMS notices can be resolved without addressing any cyberattack-related issue.

Those Medicare-enrollment questions are not being litigated in the MDL. The MDL will not decide why John Mangels remained listed in MRA's Medicare enrollment records, who was responsible for updating MRA's PECOS information, why CMS correspondence remained linked to a former Change employee's personal email address, who received the April 10 CMS notice, or why that notice was not transmitted before the reconsideration deadline. Those questions concern distinct provider-specific duties owed to MRA.

Nor do Plaintiffs' TFAP claims transform this action into an MDL case. Plaintiffs do not need cybersecurity discovery to prove whether Defendants prematurely demanded repayment, whether the contractual repayment date occurred, whether impacted payments had been processed, or whether Defendants were authorized to offset Plaintiffs' current reimbursements against disputed TFAP balances. Those claims concern provider-specific repayment conduct, not the cybersecurity allegations that define the MDL.

The claims in this Action arise from Defendants' handling of MRA's Medicare enrollment and CMS correspondence, as well as their administration of Plaintiffs' TFAP repayment obligations and reimbursement offsets. Any overlap is limited to background facts. Resolving the issues in the MDL will not resolve the issues in this Action.

**B.  Transfer Would Not Serve the Convenience of the Parties and Witnesses.**

Plaintiffs do not oppose transfer merely because Minnesota is geographically less convenient. The problem is that centralized discovery will not eliminate any material discovery in this Action. Transfer promotes convenience when there are common witnesses and evidence that can be

addressed once in a single proceeding. That rationale does not apply where, as here, the parties must conduct a separate body of provider-specific discovery regardless of transfer.

The witnesses and evidence necessary to resolve Plaintiffs' claims are materially different from those at issue in the MDL. The discovery paths barely overlap. The MDL concerns cybersecurity personnel, incident-response teams, network-security records, and ransomware-related decisions. This Action concerns Medicare-enrollment personnel, PECOS records, CMS correspondence, lockbox administration, TFAP account management, and reimbursement offsets.

Transfer would add burden without eliminating meaningful discovery. Plaintiffs would still need separate discovery into the provider-specific facts that determine liability and damages. MDL discovery concerning ransomware activity, cybersecurity controls, network monitoring, and data-security protocols will not meaningfully advance resolution of whether Defendants mishandled MRA's Medicare enrollment, failed to transmit the CMS notice, prematurely demanded TFAP repayment, or wrongfully offset Plaintiffs' reimbursements.

The same is true in reverse. Discovery into MRA's PECOS records, CMS revocation notice, lockbox arrangement, outdated contact information, and Plaintiffs' TFAP agreements will not materially advance the MDL's cybersecurity issues. Because the proof is largely different, transfer would not make the litigation more convenient for anyone.

### C.  Transfer Would Decrease Rather Than Increase Efficiency.

The final requirement for transfer is that consolidation promote the just and efficient conduct of the litigation. Transfer here would do the opposite.

The efficiencies that justify consolidation arise when coordinated discovery, motion practice, expert development, and case-management efforts can materially advance multiple actions at once. This Action will receive little benefit from those efforts. The MDL has developed around

cybersecurity issues arising from the February 2024 ransomware incident. Plaintiffs' negligence claim will not rise or fall based on any determination regarding Defendants' cybersecurity practices. Whether Defendants properly administered MRA's Medicare enrollment and CMS correspondence remains a separate question requiring separate proof.

Instead, this Action will turn on whether Defendants properly administered MRA's Medicare enrollment, maintained accurate PECOS records, monitored and transmitted CMS correspondence, fulfilled their provider-specific obligations, properly administered TFAP repayment obligations, and were authorized to offset Plaintiffs' reimbursements. Those issues require individualized proof that exists independent of the cybersecurity issues driving the MDL.

Transfer would not eliminate duplication. Plaintiffs would still need to pursue provider-specific discovery concerning CMS communications, Medicare-enrollment administration, PECOS records, TFAP repayment conditions, and reimbursement offsets. At the same time, Plaintiffs would be required to participate in an MDL focused principally on issues that will not resolve their claims. Rather than streamlining the litigation, transfer would layer MDL administration on top of the separate discovery already required here.

That distinction is especially important because the MDL has already developed around a different factual record. Since consolidation, the MDL has generated more than 110 pretrial conferences, orders, notices, and case-management structures focused on cyberattack-related issues. Plaintiffs' central issues have not been the subject of those coordinated efforts. Transferring this action now would force Plaintiffs into a litigation framework designed for a fundamentally different dispute.

Section 1407 exists to eliminate duplication—not to force a distinct dispute into coordinated proceedings merely because it shares a factual backdrop with centralized cases. Because Plaintiffs'

claims will require largely independent discovery and litigation regardless of transfer, consolidation would increase cost, complexity, and delay without producing meaningful efficiencies. Transfer therefore would decrease, rather than increase, the efficient conduct of this litigation.

### D.  Alternatively, the Panel Should Vacate Transfer of MRA's Negligence Claim.

Even if the Panel concludes that Plaintiffs' TFAP-related claims warrant transfer, MRA's negligence claim stands on entirely different footing. Plaintiffs respectfully request, in the alternative, that the Panel exercise its authority under § 1407(a) to separate and remand that claim because it presents distinct liability questions, witnesses, documents, and damages proof that will not benefit from coordinated proceedings.

That claim does not arise from the cyberattack. It arises from Defendants' independent provider-enrollment responsibilities, including maintaining accurate Medicare-enrollment information and managing CMS correspondence on MRA's behalf. Resolution of that claim will require provider-specific witnesses, documents, and proof that have no meaningful overlap with the cybersecurity issues at the center of the MDL.

Accordingly, if the Panel determines that some degree of transfer is warranted, it should at minimum separate and remand MRA's Medicare-enrollment negligence claim so that it may proceed independently in the Western District of Virginia.

CONCLUSION

Section 1407 exists to eliminate duplication, not to force fundamentally different disputes into an MDL simply because they involve the same defendants and arise against the backdrop of the same cyberattack. The claims in this Action turn on provider-specific facts, witnesses, documents, and conduct that are not at the center of MDL No. 3108. Transfer would not streamline

this Action. Instead, it would force Plaintiffs' provider-specific claims into an MDL built around materially different factual issues, requiring this Action to be litigated within an MDL designed for different claims, evidence, and witnesses. Because transfer would increase complexity without any corresponding benefit, the Panel should vacate CTO-48. Alternatively, the Panel should vacate CTO-48 as to MRA's negligence claim and permit that claim to proceed in the Western District of Virginia.

Respectfully submitted this 29th day of July, 2026,

CAMPBELL TEAGUE LLC
/s/ Kristen Reynolds
Kristen Farmer Reynolds (SC Bar #106321)
110 Edgeworth St.
Greenville, SC 29607
PH: (864) 326-4186
kristen@campbellteague.com
Admitted Pro Hac Vice

HAFEMANN MAGEE & THOMAS, LLC
John R. Thomas Jr.
317 Washington Avenue SW
Roanoke, VA 24011
PH: (570) 759-1660
jt@fed-lit.com

*Counsel for Plaintiffs:*
Radiology Associates of Roanoke, P.C.
Montgomery Radiology Associates, Inc.

9