**BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE: CHANGE HEALTHCARE, INC., CUSTOMER DATA SECURITY BREACH LITIGATION** | **MDL No. 3108** |

**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS FAMILY CARE MEDICAL CENTER, P.A.; HEALTHCARE ADMINISTRATIVE, LLC; LUTZE CONSULTING, LLC; MIND OVER MATTERS, PLLC; RED HOUSE MEDICAL BILLING MI LLC; SURGICAL RECOVERY SOLUTIONS, LLC; AND THE AUCTUS GROUP, LLC'S MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-49)**

Defendant Change Healthcare Inc. ("Defendant" or "Change") opposes the Motion to Vacate Transfer Order and Remand (the "Motion") filed by Plaintiffs Family Care Medical Center, P.A. ("Plaintiff Family Care"), Healthcare Administrative, LLC ("Plaintiff Healthcare"), Lutze Consulting, LLC ("Plaintiff Lutze"), Mind Over Matters, PLLC ("Plaintiff Mind"), Red House Medical Billing MI LLC ("Plaintiff Red House"), Surgical Recovery Solutions, LLC ("Plaintiff Surgical"), and The Auctus Group, LLC ("Plaintiff Auctus") (collectively, "Plaintiffs"). Plaintiffs do not—and cannot—argue that their claims are any different from the dozens of other cases related to the February 2024 Cyberattack on Change (the "Cyberattack") that this Panel has already transferred to the Change MDL. Instead, Plaintiffs argue that transfer is inappropriate because they will ultimately opt out of any class and the parties can coordinate discovery without transfer. The Panel, however, has rejected similar arguments in the past and should do so here. Plaintiffs' Motion to Vacate CTO-49 should be denied.

## I. BACKGROUND

### A. The Cyberattack and MDL

Change, a subsidiary of UHG, works across the health system to make clinical, administrative, and financial processes simpler and more efficient for consumers, providers, and

payers. On February 21, 2024, Change detected that an unauthorized actor had gained access to the Change environment (the "Cyberattack"). Change took prompt action to contain the incident.

Despite Change's efforts to assist those potentially affected by the Cyberattack, plaintiffs from across the country filed a wave of lawsuits against Change (and other affiliated entities in the corporate family of UHG, including UnitedHealthcare, Inc., Optum Inc., OptumInsight, Inc., Change Healthcare Solutions, LLC, and Change Healthcare Technology Enabled Services, LLC (collectively, the "Change Defendants")) arising out of the Cyberattack. Suits were brought both by individual consumers as well as by a variety of entities in the health system, including healthcare providers, pharmacies, and billing entities, alleging harms primarily stemming from the disruption of services post-Cyberattack. The MDL Transferee Court has split these categories of plaintiffs into two "tracks" thus far: one for individuals with data breach claims, and one for providers with claims arising from the service disruption (collectively, the "MDL Plaintiffs"). *In Re: Change Healthcare, Inc. Customer Data Security Breach Litig.*, No. 0:24-md-03108-DWF-DJF (D. Minn.), ECF No. 54.

The MDL Plaintiffs proposed a leadership structure that aligns with this two-track approach and which was approved by the Transferee Court. *Id.*, ECF No. 83. The entities in the providers track allege in their consolidated complaint that (1) their services were disrupted due to the Cyberattack; (2) they were unable to submit insurance claims and payments were either delayed or denied due to the Cyberattack; (3) they have experienced harms including economic losses; (4) the Change Defendants communicated inadequately about the shutdown; and (5) they suffered damages. *See* Provider Master Compl., Change MDL, ECF No. 407 ("Provider Master Compl.") at ¶¶ 89–145.

**B. Plaintiffs**

**i. Family Care Medical Center, P.A.**

Plaintiff Family Care is a "healthcare provider[] that contracted with third-party services [using Change's] products to submit bills and/or reimbursement forms" on Plaintiff Family Care's behalf. Mot. at 5; Notice of Removal, Ex. A ¶¶ 95–97, *Family Care Medical Center, P.A. v. Change Healthcare, Inc.*, No. 3:26-cv-00933 (M.D. Tenn. July 7, 2026), ECF No. 1-1 ("Family Care Compl."). Plaintiff Family Care asserts claims for negligence and unjust enrichment based on the disruption of Change's services due to the Cyberattack. Family Care Compl. ¶¶ 107–27. These claims overlap with the claims asserted by the MDL Provider plaintiffs.

**ii. Healthcare Administrative, LLC**

Plaintiff Healthcare operates as an independent revenue cycle management ("RCM") company providing billing and collection services to healthcare providers. Mot. at 5; Notice of Removal, Ex. A ¶¶ 69–70, *Healthcare Administrative, LLC v. Change Healthcare Inc.*, No. 3:26-cv-00934 (M.D. Tenn. July 7, 2026), ECF No. 1-2 ("Healthcare Compl."). Plaintiff Healthcare asserts claims for negligence and gross negligence, negligence *per se*, unjust enrichment, and tortious interference with business relationships and business expectancies based on the disruption of Change's services due to the Cyberattack. Healthcare Compl. ¶¶ 96–150. These claims overlap with the claims asserted by the MDL Provider plaintiffs.

**iii. Lutze Consulting, LLC**

Plaintiff Lutze operates an independent RCM company providing billing and collection services to healthcare providers. Mot. at 4–5; Notice of Removal, Ex. A ¶¶ 69–70, *Lutze Consulting, LLC v. Change Healthcare Inc.,* No. 3:26-cv-00935, Notice of Removal (M.D. Tenn. July 7, 2026), ECF No. 1-1 ("Lutze Compl."). Plaintiff Lutze asserts claims for negligence and gross negligence,

negligence *per se*, unjust enrichment, and tortious interference with business relationships and business expectancies based on the disruption of Change's services due to the Cyberattack. Lutze Compl. ¶¶ 94–148. Plaintiff Lutze's claims overlap with the claims asserted by the MDL Provider plaintiffs.

**iv. Mind Over Matters, PLLC**

Plaintiff Mind is a "healthcare provider[] that contracted with third-party services [using Change's] products to submit bills and/or reimbursement forms" on Plaintiff Mind's behalf. Mot. at 5; Notice of Removal, Ex. A ¶¶ 66–67, *Mind Over Matters, PLLC v. Change Healthcare Inc.*, No. 3:26-cv-00936 (M.D. Tenn. July 7, 2026), ECF No. 1-1 ("Mind Compl."). Plaintiff Mind asserts claims for negligence, third-party beneficiary breach of contract, and unjust enrichment based on the disruption of Change's services due to the Cyberattack. Mind Compl. ¶¶ 76–100. Plaintiff Mind's claims overlap with the claims asserted by the MDL Provider plaintiffs.

**v. Red House Medical Billing MI LLC**

Plaintiff Red House operates an independent RCM company providing billing and collection services to healthcare providers. Mot. at 4–5; Notice of Removal, Ex. A ¶ 69, *Red House Medical Billing MI LLC v. Change Healthcare Inc.*, No. 3:26-cv-00937 (M.D. Tenn. July 7, 2026), ECF No. 1-1 ("Red House Compl."). Plaintiff Red House asserts claims for negligence, gross negligence, negligence *per se*, tortious interference with business relationships and business expectancies, and unjust enrichment based on the disruption of Change's services due to the Cyberattack. Red House Compl. ¶¶ 96–155. Plaintiff Red House's claims overlap with the claims asserted by the MDL Provider plaintiffs.

**vi. Surgical Recovery Solutions, LLC**

Plaintiff Surgical is a "healthcare provider[] that contracted with third-party services [using Change's] products to submit bills and/or reimbursement forms" on Plaintiff Surgical's behalf. Mot. at 5; Notice of Removal, Ex. A ¶¶ 22–23, *Surgical Recovery Solutions, LLC v. Change Healthcare Inc.*, No. 3:26-cv-00938 (M.D. Tenn. July 7, 2026), ECF No. 1-1 ("Surgical Compl."). Plaintiff Surgical asserts claims for negligence and gross negligence, negligence *per se*, unjust enrichment, and tortious interference with business relationships and business expectancies. Surgical Compl. ¶¶ 85–131. Plaintiff Surgical's claims overlap with the claims asserted by the MDL Provider plaintiffs.

**vii. The Auctus Group, LLC**

Plaintiff Auctus operates an independent RCM company providing billing and collection services to healthcare providers. Mot. at 4–5; Notice of Removal, Ex. A ¶ 70, *The Auctus Group, LLC* v. Change Healthcare Inc., No. 3:26-cv-00939 (M.D. Tenn. July 7, 2026), ECF No. 1-2 ("Auctus Compl."). Plaintiff Auctus asserts claims for negligence and gross negligence, negligence *per se*, unjust enrichment, and tortious interference with business relationships and business expectancies. Auctus Compl. ¶¶ 95–149. Plaintiff Auctus's claims overlap with the claims asserted by the MDL Provider plaintiffs.

**C. Procedural History**

On March 13, 2024, several plaintiffs in cases stemming from the Cyberattack moved this Panel to transfer and centralize those actions. ECF No. 2 (the "Transfer Motion"). Change, along with other related entities which had been named in these cases, filed a response to the Transfer Motion, supporting transfer and centralization. ECF No. 56. On June 7, 2024, the Panel granted the Transfer Motion, creating the Change MDL. ECF No. 158. Thus far, over forty-nine

Conditional Transfer Orders have been issued and over forty have been finalized. Over 100 cases are now part of the MDL. ECF Nos. 164, 174, 175, 192, 222, 246, 253, 279, 296, 297, 315, 333, 381, 411, 413, 428, 478, 493, 496, 508, 522, 528, 537, 553, 574, 582, 585, 587, 601, 604, 615, 633, 639, 646–47, 662, 666, 668, 676, and 679. In addition to Plaintiffs, nearly twenty other plaintiffs and one non-Change defendant have briefed a motion to vacate the CTO applying to them. ECF Nos. 172, 193, 213, 223, 289, 304, 309, 322, 348, 373, 399, 418, 466, 475, 500, 541, 568, 635, 700.

On February 22 and 23, 2026, Plaintiffs Family Care, Healthcare, Lutze, Mind, Red House, Surgical, and Auctus filed suit in the Circuit Court for Davidson County, Tennessee. Mot. at 2–3; Notice of Removal, *Family Care Medical Center, P.A. v. Change Healthcare, Inc.*, No. 3:26-cv-00933 (M.D. Tenn. July 7, 2026), ECF No. 1; Notice of Removal, *Healthcare Administrative, LLC v. Change Healthcare Inc.*, No. 3:26-cv-00934 (M.D. Tenn. July 7, 2026), ECF No. 1; Notice of Removal, *Lutze Consulting, LLC v. Change Healthcare, Inc.*, No. 3:26-cv-00935 (M.D. Tenn. July 7, 2026), ECF No. 1; *Mind Over Matters, PLLC v. Change Healthcare Inc.*, No. 3:26-cv-00936 (M.D. Tenn. July 7, 2026), ECF No. 1; Notice of Removal, *Red House Medical Billing MI LLC v. Change Healthcare Inc.*, No. 3:26-cv-00937 (M.D. Tenn. July 7, 2026), ECF No. 1; Notice of Removal, *Surgical Recovery Solutions, LLC v. Change Healthcare Inc.*, No. 3:26-cv-00938 (M.D. Tenn. July 7, 2026), ECF No. 1; Notice of Removal, *The Auctus Group, LLC v. Change Healthcare Inc.*, No. 3:26-cv-00939 (M.D. Tenn. July 7, 2026), ECF No. 1 (all seven cases are collectively referred to herein as "the Tennessee Actions"). On July 7, 2026, Change filed Notices of Removal in the United States District Court for the Middle District of Tennessee based on diversity jurisdiction. *Id.*

On July 8, 2026, Change filed a "Notice of Potential Tag-Along Actions" with the Panel to initiate a transfer of the Tennessee Actions to the MDL. *In Re: Change Healthcare, Inc. Customer Data Security Breach Litig.*, No. 0:24-md-03108-DWF-DJF (D. Minn.) ("Change MDL"), ECF No.

683. Change moved to stay each of the Tennessee Actions pending a decision on transfer by the Panel. *See, e.g.*, *Surgical Recovery Solutions, LLC v. Change Healthcare Inc.*, No. 3:26-cv-00938, ECF No. 6. Change also moved to vacate the state court orders granting limited jurisdictional discovery in the Tennessee Actions. *See, e.g.*, *id.*, ECF Nos. 8–9.

On July 10, 2026, the Panel issued CTO-49 directing that the Tennessee Actions be transferred to the Change MDL. ECF No. 684. Plaintiffs filed an objection to CTO-49 on July 17, 2026, ECF No. 688, and subsequently filed a motion to vacate CTO-49, ECF No. 700.

## II. ARGUMENT

The Panel created the Change MDL to "serve the convenience of the parties and witnesses" and "avoid the possibility of inconsistent pretrial rulings" given that the various MDL claims "all arise from the same data breach, and all will involve discovery as to the circumstances and consequences of that breach." ECF No. 158, at 2. The Panel applied that reasoning to a wide range of claims, including those by entities that claim injury based on their inability to use the Change Defendants' services. ECF No. 158, at 2. Plaintiffs' claims, like the other claims in the Change MDL, (i) are significantly based on, and inextricably linked to, the Cyberattack and (ii) are anticipated to require discovery from the Change Defendants as to the circumstances and consequences of that breach and the subsequent restoration.

The Tennessee Actions should be transferred to the Change MDL because they are related to the Cyberattack, are premised on similar alleged harms, and allege the same legal theories as the MDL claims. Furthermore, including Plaintiffs' claims in the Change MDL will enhance the convenience of the parties and reduce duplicative discovery.

### A. The Tennessee Actions Arise Out of the Same Cyberattack and Overlap with the MDL Plaintiffs' Allegations

Plaintiffs argue that, despite the similar common core of the Cyberattack and the factual and legal overlap between their claims and those in the MDL, the Tennessee Actions should not be centralized. Specifically, Plaintiffs argue (1) transfer of the actions does not promote efficiency or just conduct of Plaintiffs' claims; (2) any efficiencies of coordinated discovery are already available without transfer, and (3) Plaintiffs will not be able to obtain certain jurisdictional discovery while the Tennessee Actions are pending in the MDL. Mot. at 7–9. These, or similar arguments, have already been rejected by the Panel.

*First*, that Plaintiffs intend "to opt out of any class[] that may be certified" arising from the Data Breach is irrelevant. Transfer Order at 2, ECF No. 708. As the Panel has explained in ordering transfer of other factually similar cases from Tennessee (brought by Plaintiffs' attorneys), "[t]hat plaintiffs may opt out of any classes certified does not weigh against transfer." *Id.* In fact, the Panel has "'routinely transfer[red] opt-out actions to MDLs' even after class settlements have been reached 'because of the efficiencies to be gained from the transferee court's management of overlapping actions and expertise in the issues.'" *Id.* at 2 (quoting *In re Snowflake, Inc., Data Sec. Breach Litig.*, MDL No. 3126, 2026 WL 323102, at *2 (J.P.M.L. Feb. 5, 2026)). Additionally, "[t]o the extent that transfer may cause plaintiffs inconvenience, it is nonetheless appropriate because [the Panel] look[s] to 'the overall convenience of the parties and witnesses, not just those of a single plaintiff or defendant in isolation.'" *Id.* at 2 (quoting *In re Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d 1350, 1351–52 (J.P.M.L. 2012)).

*Second,* there are "common questions of fact" between the Tennessee Actions and the Change MDL, 28 U.S.C. § 1407. Plaintiffs do not dispute this. Transferring the Tennessee Actions to the Change MDL would avoid inconsistent rulings and promote the convenience of the parties.

*See, e.g.*, *In re Home Depot, Inc.*, *Customer Data Sec. Breach Litig.*, 65 F. Supp. 3d 1398, 1399–400 (J.P.M.L. 2014) (centralizing where actions brought by consumers and financial institutions arose "from a common factual core—namely, the Home Depot data breach."). The complaints in the MDL arise out of and concern the Cyberattack, just like the Tennessee Actions—as Plaintiffs concede. *See* Mot. at 6 (acknowledging that "these Actions arise out of the same data breach that is at issue in the MDL"). Plaintiffs' claims that their contracted-for services were interrupted by the Cyberattack duplicate claims that dozens of plaintiffs in the Change MDL have made. *Compare* Family Care Compl. at ¶¶ 97–106; Healthcare Compl. at ¶¶ 69–84; Lutze Compl. at ¶¶ 69–82; Red House Compl. at ¶¶ 69–84; Mind Compl. at ¶¶ 66–75; Surgical Compl. at ¶¶ 62–73; and Auctus Compl. ¶¶ 69–83 (alleging that, due to the Cyberattack and Change's disconnection of the Change Platform, the Plaintiffs were unable to access essential data and systems under their agreements with Change), *with* Provider Master Compl. ¶¶ 471–98 ("Change's failure to act in good faith in implementing the security measures required by the contracts also caused Direct Contract plaintiffs and Change Healthcare Inc. Direct Contract Sub-Class members to suffer actual damages including a loss or delay of substantial income resulting from the shutdown of the Change Platform"); *Lemke v. Change Healthcare, Inc.*, No. 3:24-cv-00302 (M.D. Tenn. Mar. 14, 2024), ECF No. 47, at ¶ 5 (alleging "disruption to their access to Defendants' networks and transactional services, including the loss of access to Defendants' insurance claims clearinghouse and loss of income from insurance claims."). As a result, there are overlapping questions of fact regarding how the Cyberattack occurred, the extent to which services were disrupted, and the steps Change took to restore access to insurance and other information stored on the Change platform.

The Panel emphasized the importance of common questions of fact when it created the Change MDL. Change MDL, ECF No. 158, at 2 ("The actions share common questions of fact"

arising from the Cyberattack). Plaintiffs are similarly situated to other plaintiffs in the MDL that likewise allege harm resulting from the loss of access to their contracted-for services. The JPML has long noted the wisdom of centralizing cases arising from a single data breach as a common factual core, even when some unique claims and factual issues are present. *See, e.g.*, *In re Marriott Int'l, Inc.*, *Customer Data Sec. Breach Litig.*, 363 F. Supp. 3d 1372, 1374 (J.P.M.L. 2019) (centralizing cases despite "unique claims, and some unique factual issues" based on "overlapping factual issues and discovery").

The Panel has already held that a key factor in centralization is that "the injuries asserted . . . are the same injuries asserted against the Change Healthcare defendants by most, if not all," of the other similar plaintiffs. Transfer Order, ECF No. 196 at 2. Plaintiffs' claims and legal theories overlap with those of plaintiffs in the Change MDL, and Plaintiffs assert claims for relief virtually identical to those asserted by the MDL Provider plaintiffs, including negligence (*compare* Family Care Compl. ¶¶ 107–21 *with* Provider Master Compl. ¶¶ 447–59), negligence *per se* (*compare* Healthcare Compl. ¶¶ 112–28 *with* Provider Master Compl. ¶¶ 460–71), unjust enrichment (*compare* Family Care Compl. ¶¶ 122–27 *with* Provider Master Compl. ¶¶ 515–20), and interference with prospective economic advantage, business relationship, or expectancy (*compare* Lutze Compl. ¶¶ 133–48 *with* Provider Master Compl. ¶¶ 521–29). These and similar claims alleging service disruptions and resulting damage due to the Cyberattack have all been centralized into the Change MDL, and Plaintiffs' claims and alleged damages should not be treated any differently.

**B. Plaintiffs' Attempts to Downplay the Efficiencies of Consolidation with the MDL Are Unpersuasive.**

The purpose of centralizing pretrial proceedings is to enhance the "convenience of parties and witnesses" and the "just and efficient conduct of such actions," 28 U.S.C. § 1407(a), and a key

element of enhancing the convenience of the parties is avoiding duplicative discovery and conserving party resources. ECF No. 158 at 2 (noting that discovery in all actions would focus on similar facts); *see also In re MOVEit Customer Data Sec. Breach Litig.*, 699 F. Supp. 3d 1402, 1405 (J.P.M.L. 2023) (centralization will "reduce duplicative discovery" and "conserve the resources of the parties, their counsel, and the judiciary"); *In re Juul Labs, Inc.,* 396 F. Supp. 3d 1366, 1367 (J.P.M.L. 2019) (same). Failing to transfer the Tennessee Actions to the MDL would cut against the Panel's purposes in creating the MDL and force Change to engage in burdensome duplicative discovery.

Relatedly, there is a risk of inconsistent pretrial rulings if the Tennessee Actions are not transferred. *See* 28 U.S.C. § 1407; ECF No. 158, at 2. Separate proceedings create the possibility of inconsistent rulings on dispositive motions pertaining to the overlapping causes of action in the Change MDL and the Tennessee Actions. Centralization will also avoid the possibility of inconsistent discovery rulings, particularly regarding attorney-client privilege and work product protection. Given the similarities between Plaintiffs' Cyberattack-based claims and the claims already present in the Change MDL, rejecting consolidation for the Tennessee Actions is likely to lead to duplicative discovery.

Plaintiffs argue that "despite the MDL being litigated, there are several state cases currently pending across the country, including in the Davidson County Circuit Court, where discovery is ongoing." Mot. at 8. Thus, according to Plaintiffs, these actions can be coordinated without transfer. *Id.* at 9. But whether there are *state* court actions based on the Cyberattack incapable of consolidation is irrelevant to whether *federal* cases should be transferred to the MDL. As this Panel has already explained, transfer of federal actions like Plaintiffs' "fall squarely within the scope of the MDL" and should be transferred. *See, e.g.* Transfer Order at 1, ECF No. 708; Transfer Order,

ECF No. 233 (holding that transfer was proper based on "the overall convenience of the parties and witnesses" rather than the interests "of a single plaintiff or defendant in isolation") (quoting *In re Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d at 1351–52). Centralization is for pretrial purposes only—Plaintiffs will still have the opportunity to try the Tennessee Actions in the Middle District of Tennessee, to the extent their claims survive pretrial proceedings.

Moreover, Plaintiffs contend that Change's motion to vacate the state court's order regarding jurisdictional discovery "means that Plaintiffs will have to wait until class certification, or obtain leave from lead counsel in the MDL, to regain access to discovery already ordered." Mot. at 9. However, to the extent Plaintiffs believe they are entitled to specific discovery—or seek to remand these cases back to Tennessee state court—such requests may be heard by the transferee judge. *See, e.g.*, Transfer Order at 1, ECF No. 708 ("We consistently have held that we do not consider the merits of remand motions in deciding whether actions should be transferred and that arguments concerning the propriety of federal jurisdiction are insufficient to warrant vacatur." (citing *In Re Prudential Ins. Co. of Am. Sales Practices Litig.*, 170 F. Supp. 2d 1346, 1347–48 (J.P.M.L. 2001)); *In re Satyam Comp. Servs., Ltd., Secs. Lit.*, 712 F. Supp. 2d 1381, 1382 (J.P.M.L. 2010) (explaining how transfer will allow "a single judge [to] formulate a pretrial program that: (1) allows discovery with respect to any non-common issues to proceed concurrently with discovery on common issues, and (2) ensures that pretrial proceedings are conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties" (citation omitted)).

In sum, the Panel should transfer the Tennessee Actions—to hold otherwise would defeat the purpose of the Panel in creating the Change MDL, run counter to the purpose of centralization

under Section 1407, and "complicate, rather than clarify, the litigation." *In re MOVEit*, 699 F. Supp. 3d at 1406 n.6.

## CONCLUSION

For these reasons, the Panel should deny Plaintiffs' Motion and finalize CTO-49.

Dated: August 21, 2026

Respectfully submitted,

*/s/ Allison M. Ryan* .

Allison M. Ryan
Hogan Lovells Cadwalader US LLP
555 13th Street NW
Washington, D.C. 20004
T. (202) 637-5600
F. (202) 637-5910
allison.holt-ryan@hlc.com

*Counsel for Defendant Change Healthcare Inc.*